SAVOY, Judge.
This is a tort action brought by Jesse P. Terrell and his wife, Katherine Terrell, for damages for personal injuries received by Mrs. Terrell and for certain medical expenses and special damages arising out of an automobile collision which occurred on January 11, 1958, on MacArthur Drive near the City of Alexandria, Louisiana. The plaintiff, Mrs. Terrell, was a guest passenger in a 1957 Pontiac automobile owned by Charles H. Cannon and being driven at the time by his fiancee, Miss Bertha S. Terrell, who has since become his wife. Hereafter, she will be referred to as Mrs. Cannon. The defendant, American Automobile Insurance Company, is the public liability insurance carrier of Charles H. Cannon.
At the scene of the accident MacArthur Drive is a four lane highway running generally in a southeast and northwest direction. Between the two northbound lanes and the two southbound lanes is a neutral ground 40 feet in width in which there is located a drainage ditch. The accident occurred at or near the intersection of MacArthur Drive and a side road known as Brown’s Bend Road. The Cannon vehicle, in which plaintiff was a guest passenger, was proceeding in a southerly direction on MacArthur Drive at a speed of approximately 50 miles per hour. There is some conflict in testimony as to whether the Cannon vehicle was in the left or right southbound lane of traffic. At any rate, it appears that, as Mrs. Cannon neared the intersection a pick-up truck, the driver of which remains unidentified to this day, pulled out onto the highway from Brown’s Bend Road, that is, from Mrs. Cannon’s right. It is contended that, as a result, Mrs. Cannon, in an effort to avoid the pick-up truck, turned to her left. The Cannon vehicle then crossed the neutral ground at approximately a forty-five degree angle, entered the northbound traffic lanes on the opposite side of the neutral ground and collided with another vehicle being driven by a Mrs. Wainwright after having traveled approximately 182 feet. The learned trial judge found for defendant on the basis of his belief that the accident was caused solely by the negligence of the driver of the pick-up truck and that Mrs. Cannon did everything she could or should have done under the circumstances, from which judgment plaintiffs have appealed.
It is the opinion of this Court that the law applicable to this case is well settled, without the necessity of citing authorities therefor, in two overall respects:
1. Generally, a motorist traveling on a favored street has the right to assume that motorists on subordinate streets will yield the right-of-way.
2. Generally, if, in fact, such right-of-way is not yielded, under physical circumstances calling upon the favored motorist to ascertain that fact and act in time to avoid a collision, he, the favored motorist, must do so.
From a reading of the transcript and the trial judge’s reasons for judgment in this case, it is apparent that the sole issues involved are the two following interrelated questions of fact:
1. Should Mrs. Cannon have been able to ascertain the pick-up truck’s entry into the highway in time to avoid an accident?
2. And/or, under the circumstances, should she have been able to maintain a degree of control sufficient to avoid a collision with the Wainwright car?
Regarding the decision now rendered by this Court, a reading of the entire record has made us cognizant of the fact that, by joint stipulation of counsel, all of the testimony, except that of the plaintiff guest passenger relating to the nature and extent of her injuries, was taken by deposition prior to trial. As a result the trial judge did not have the opportunity of seeing and hearing the witnesses. He made his decision on the basis of the depositions taken out of the presence of the court, but *191 introduced in evidence by stipulation of counsel. That being the case, we do not feel constrained to give the general rule of manifest error its usual weight in viewing the trial judge’s conclusions of fact. Morehead v. Shreveport Rys. Co., La.App.1940, 195 So. 95. We have therefore been particularly careful to examine the transcript in minute detail with respect to what it revealed about the questions of fact here involved.
With regard to the testimony as it relates to shedding light on the question of the circumstances surrounding the pick-up truck’s initial entry into the highway, the following was observed:
The testimony of State Trooper Reid was to the effect that Mrs. Cannon’s skid marks began relatively close to the northerly edge of the intersection of MacArthur Drive and Brown’s Bend Road.
The testimony of the plaintiff guest passenger indicates that the Cannon vehicle was almost to the intersection; that the pick-up truck “looked like he was coming straight across the road at us”; that “we were entering the intersection”; that “we were already at the intersection”; and finally, that the situation happened in a breath or second with no time to think. She indicated that she and Mrs. Cannon first saw the truck at about the same time. She stated that “we were already going into the intersection” when the truck pulled into the highway.
The testimony of Mrs. Cannon, driver of the insured vehicle, uses substantially the same explanatory terms as does the testimony of the guest passenger in describing their nearness to the intersection at the time the truck pulled out.
The testimony of Fred A. Smith, who was following Mrs. Cannon at a distance of what he estimated at approximately 200 feet, shows that the truck “pulled out onto the highway in front of Mrs. Terrell” (Cannon) ; that Mrs. Cannon’s speed did not appear excessive; that he felt “very sure” that the pick-up truck encroached into and over the traffic lane occupied by Mrs. Cannon; that Mrs. Cannon appeared to be close to the intersection when the truck pulled out; and finally, while unable to estimate in feet, that she was very close to the intersection.
The testimony, generally, indicated that the pick-up truck did not stop at the stop sign on Brown’s Bend Road before entering the highway, and that he did not approach the highway at what could have been considered an excessive speed, or at least not a speed that would have indicated lack of intention to stop.
The record revealed that considerable stress was placed on the question of whether or not an actual collision or any physical contact at all occurred between the Cannon vehicle and the pick-up truck. The testimony is conflicting, or at least conflicting inferences are raised. Both Mrs. Cannon and the plaintiff guest passenger, however, testify very definitely that there was physical contact and we conclude that there must have been. At any rate, we do not feel that the answer to the question is necessarily determinative of the issues involved. The real question, we feel, is contact or not, could or should Mrs. Cannon have avoided the accident as such.
At various points in the transcript it is brought out that, with regard to the collision or near-collision between the Cannon vehicle and the pick-up truck, the pickup truck was already facing in a southerly direction on the highway, it being the driver’s apparent intention to turn right onto the highway from the side road, and the points of impact were or would have been the front of the Cannon vehicle and the rear of the pick-up. We note, additionally, that both Mrs. Cannon and the plaintiff guest passenger described the meeting of the two vehicles as being more or less simultaneous to the swinging around or turning of the pick-up truck as it entered the highway. The impression given is that they were attempting to convey the thought that the two *192 vehicles more or less dove-tailed together, front to hack, in the process of Mrs. Cannon’s entry into the intersection on the one hand and the pick-up’s turn into the highway on the other.
Leaving now the immediate scene of the intersection, the question arises whether Mrs. Cannon could or should have avoided colliding with the Wainwright car. It is to be recalled that the Cannon vehicle traveled a distance of some 182 feet from the southbound traffic lanes diagonally across the neutral ground and into the northbound traffic lanes. The record revealed several things that are of particular interest:
It had been raining for several days prior to the accident, had rained shortly before, and the ground in the neutral was soft and slick.
An examination of the photographic exhibits on file in the record shows that the neutral ground slopes down and then up, forming something of a shallow or gentle “V”, the bottom of the V being for the purpose of drainage. There apparently was no great amount of water at the bottom of the V, at least not what would be called a flowing stream, we gather.
The tracks of the Cannon vehicle, though at a 45 degree angle, were in a straight line. There apparently were no skid marks in the neutral ground, but rather tire tracks as such with the imprint of the tread visible, indicating that the brakes were not being applied at that time.
Mrs. Cannon testified that when the car left the concrete and entered the neutral ground she was thrown about to the extent that she was dazed and that she recalls nothing until after the collision with the Wainwright car.
Having carefully examined, we must now weigh and decide.
First, with regard to whether Mrs. Cannon could or should have avoided that part of the chain of events having to do with the pick-up truck, we conclude that the pick-up truck did, in fact, enter the highway directly in her path as she entered the intersection. Much was made of her observance, or non-observance, of its approach from the side road before turning onto the highway, specifically, in time to avoid an accident. However, we cannot escape the conclusion that, at distances as close as those prevailing in the instant case, the truck’s sudden entry into the highway must prevail over all other considerations where the record discloses no probable carelessness on her part. Under the prevailing circumstances, we could only surmise an opportunity on her part to take defensive action, where as the record concretely sets forth the action of the pick-up truck.
Second, with regard to her crossing of the neutral ground, we must admit that there is little in the record by which we can say that she could have stopped or that she could not have. However, the things that are revealed in the record tend, we feel, to tip the scales to the conclusion that her inability to stop was not a result of her negligence.
In the final analysis we have arrived at the same conclusions as did the trial judge, and accordingly, the judgment of the lower court is affirmed, all costs of this appeal to be borne by plaintiffs.
Affirmed.