251 So.2d 810 (1971)
W. E. SMITH and Mrs. Rita Seawillow Smith, Plaintiffs-Appellees-Second Appellants,
v.
WEST CALCASIEU-CAMERON HOSPITAL et al., Defendants-Appellees-First Appellants.
No. 3489.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1971.
*811 Brame, Stewart & Bergstedt by John E. Bergstedt, Lake Charles, for defendants-appellants.
Baggett, Hawsey & McClain by William B. Baggett, Lake Charles, for plaintiffs-appellees.
Scofield & Bergstedt by John B. Scofield, Lake Charles, for defendant-appellee.
Before FRUGÉ, HOOD, and DOMENGEAUX, JJ.
FRUGE, Judge.
This is an action against the West Calcasieu-Cameron Hospital and its liability insurer, and a treating physician and his malpractice insurer, for damages to cover personal injuries sustained because of a fall in the hospital by Mrs. W. E. Smith. This suit was instituted by W. E. Smith and his injured wife. This case was tried before Judge Clement M. Moss, and shortly thereafter, while the case was still under advisement, Judge Moss died. Before a judgment could be rendered in the case, Mrs. W. E. Smith also died. Subsequently, the sole and only heirs of the deceased were substituted as parties-plaintiff. The case was subsequently decided on the record by Judge Moss's successor, in accordance with LSA-R.S. 13:4209. Judgment was rendered in favor of the plaintiffs, and against the hospital and its liability insurer. Judgment was also rendered in favor of the defendant, Dr. H. B. Lovejoy, and his medical malpractice insurer, The Insurance Company of North America.
Following the rendition of judgment, an appeal was granted upon a motion of the hospital and its insurer. Subsequently, an appeal was also granted in favor of the plaintiff seeking a reversal of the judgment in favor of Dr. Lovejoy and his insurer, as well as an increase in the award made against the hospital.
We affirm the judgment of the trial court.
Counsel for the hospital and its insurer (hereinafter referred to as first appellant) takes the position that, since the trial judge who saw and heard the witnesses was not the same judge who rendered a decision in this case, the normal rule of manifest error ought not to be given its usual weight in reviewing the trial judge's conclusion of fact. Three circuits, including this court, have held at various times that when the trial judge does not see and hear the witnesses, his conclusions of fact cannot carry the usual weight of the general manifest error rule. See: Allstate Insurance Company v. Shemwell, 142 So.2d 866 (La.App.2nd Cir., 1962); Terrell v. American Automobile Insurance Company, 125 So.2d 189 (La.App.3rd Cir., 1960); Boudreaux v. Moreau, 73 So.2d 192 (Orl.La.App.1954). We are aware of these authorities and consider that we are free *812 to assign less weight than usual to the trial court's finding of fact concerning the credibility of witnesses.
The facts of this case reveal that on March 15, 1968, Mrs. Rita Seawillow Smith was admitted to West Calcasieu-Cameron Hospital at approximately 6:00 P.M. by her physician, Dr. H. B. Lovejoy. Mrs. Smith had a history of heart involvement, but was on this occasion admitted because of acute bronchitis and laryngitis.
The treating physician left instructions with the hospital staff to administer to Mrs. Smith Levoprome as needed for pain and to continue other medication. Mrs. Smith was given the ordered medication, and at about 9:00 P.M. she was given one and one-half grains of Carbrital, a sedative. After receiving this sedative, she again went to sleep. Sometime between 9:00 and 10:00 o'clock, Mrs. Smith injured herself, when she either fell from the bed, or when she fell after having gotten out of bed. As Mrs. Smith was heavily sedated, and there were no witnesses to the fall, it is questionable whether she fell from the bed or whether she fell while trying to get out of the bed, having become entangled in the sheets, or whether she fell while walking across the room to the bathroom.
The trial court held that Mrs. Smith fell out of the bed through no fault of her own. The trial court further held that the use of bed rails would have prevented such a fall, and the hospital was negligent in not having placed such bed rails on the bed. Additionally, the court held that Dr. Lovejoy properly left the handling of the patient to the hospital staff, and was not negligent in failing to order bed rails placed upon the bed.
It was not until the next morning around 9:00 or 10:00 A.M. that it was discovered after a thorough examination and x-ray, that Mrs. Smith had sustained a fracture of the neck of the femur. Additionally, a hospital record entry noted that she had sustained a "hematoma (approximate size of 50¢) noted above right temple."
Mrs. Smith was hospitalized subsequently for 108 days and incurred several operations, and was apparently left with a 75% disability of the left extremity. The trial court awarded $11,122.20 to Mr. W. E. Smith as the amount of hospital and medical expenses incurred as a result of the fall. The court additionally awarded $27,000 for the damages and personal injuries sustained by Mrs. Smith.
The plaintiff takes the position that the hospital staff negligently failed to place bed rails on the hospital bed after having given Mrs. Smith a sedative. In support of this, plaintiff introduced into evidence the Nurses' Procedure Book, which was in effect at the hospital at the time of the accident, which says in part:
"Side rails are always applied in the following instances: (1) patients under sedation * * *."
The plaintiff also introduced evidence from hospital records that when Mrs. Smith was in the same hospital between March 2, 1968, and March 12, 1968, she had experienced reactions and side effects from medications, including Levoprome. One entry in the hospital record, cited by the plaintiff notes:
"Patient rang signal light and upon answering it (immediately) she was found lying on the floor, with head in open door."
On that occasion, Mrs. Smith suffered no injuries or abrasions. Several of the nurses, as well as Dr. Lovejoy, knew that the effect of Levoprome and other medications on Mrs. Smith usually made her very groggy, and she would be heavily sedated and confused.
The testimony of various doctors in this case, as well as the testimony of the Director of Nursing at Memorial Hospital, and Mr. Frank Gayle, Hospital Director of West Calcasieu-Cameron Hospital, all indicate that the raising of side rails on beds is not normally a matter of specific orders from a doctor, but that normally it is a *813 matter to be handled by hospital personnel. Mr. Gayle testified, for example, that a doctor had the right to expect that side rails would be applied when needed. Numerous doctors who testified indicated that they did not order side rails placed on the bed as a specific order normally, but left this to the discretion of hospital personnel attending to the safety and care of their patient.
The totality of the evidence and the testimony in this case amply supports the conclusion of the trial court that Dr. Lovejoy was not negligent in failing to specifically order the raising of side rails on Mrs. Smith's bed. We conclude, therefore, that the trial court correctly found that Dr. Lovejoy was not negligent in failing to order side rails placed on Mrs. Smith's bed.
Despite the fact that it is disputed in this case whether Dr. Lovejoy ordered a sleeping pill at the time Mrs. Smith was admitted, or whether the sleeping pill was administered later at the request of her husband, it is nonetheless clear that the hospital personnel knew or should have known that it was not the duty of the doctor, alone, to order the placement of side rails.
There is ample conjecture on both sides in this case concerning whether or not side rails on the bed would have prevented the fall which Mrs. Smith experienced. The testimony of the attending nurse is to the effect that Mrs. Smith told her that she had fallen after getting out of the bed and making her way to the bathroom. Mrs. Smith later testified that she had attempted to get out of the bed and that she had fallen in the process of trying to get up. Regardless of how the fall actually occurred, we are of the opinion that the hospital personnel violated hospital policies and generally accepted nursing practices, when the personnel failed to apply side rails to Mrs. Smith's bed. For this reason, we think the judgment of the trial court, insofar as the court found that Mrs. Smith fell out of the bed through no fault of her own, and that the use of the side rails would have prevented such a fall, was correct. We are of the opinion that the failure to place side rails on Mrs. Smith's bed, under all the facts and circumstances of this case, constituted negligence.
The plaintiff contends that the award of $27,000 for Mrs. Smith's injuries and personal pain and suffering is grossly inadequate. The plaintiff failed to cite any cases or authority for the proposition that the award in this case is grossly inadequate. The defendants, on the other hand, take the position that the award in this case is excessive.
While reasonable men may differ on the amount of an award, and while it is true that awards of this nature are not subject to any precise formula, nonetheless, we are of the opinion that there is nothing in the record which indicates that the award is either manifestly excessive or manifestly inadequate.
The injuries suffered by Mrs. Smith caused grievous pain and suffering; and, additionally, she was hospitalized for many days and underwent numerous operations, including the insertion of a pin and ball in the hip joint, to replace the broken femur. We think the award properly reflects the injuries sustained in this case.
For the above and foregoing reasons, the judgment of the trial court is affirmed in all respects. The costs of this appeal are to be paid equally by the plaintiffs-appellants, W. E. Smith and Rita Seawillow Smith, and by the defendants-appellants, West Calcasieu-Cameron Hospital and the Argonaut-Southwest Insurance Company.
Affirmed.