293 So.2d 589 (1974)
Archie T. FARRIS, Plaintiff-Appellant,
v.
Milburn J. DUCOTE, d/b/a Coltharp's Commission Barn and Argonaut Insurance Company, Defendants-Appellees.
No. 4432.
Court of Appeal of Louisiana, Third Circuit.
March 25, 1974.
Rehearing Denied May 14, 1974.
Writ Refused June 21, 1974.
*590 Ford & Nugent by Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant.
Gold, Hall, Hammill & Little by James D. Davis, Alexandria, for defendant-appellee.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
This is a suit for workmen's compensation benefits. Plaintiff is Archie T. Farris and defendants are Milburn J. Ducote, d/b/a Coltharp's Commission Barn, and Argonaut Insurance Company (sometimes referred to as "employer" and "insurer" respectively). It is undisputed that plaintiff suffered an accident during the course and scope of his employment on December 15, 1970, when he was attacked by a bull at the auction barn. It was stipulated that Argonaut Insurance Company had in full force and effect a policy of workmen's compensation insurance on the date of the accident.
Plaintiff had been employed at the auction barn for some twenty-three years prior to the accident, but his employment was only one day per week at wages of $20.00 for the day.
While assisting with the handling of cattle on December 15, 1970, plaintiff was butted by a bull estimated by him to weigh approximately 1,000 pounds. Plaintiff attempted to climb the adjacent fence but was unable to climb high enough to get away from the bull which continued to butt him about the back and legs. Fortunately, the bull's attention was distracted by a veterinarian and plaintiff was able to escape.
Plaintiff continued at work for a period of approximately four hours and then reported to the office of Dr. Etienne R. Brown, a general practitioner in DeRidder. Dr. Brown treated plaintiff from the date of the accident until February 19, 1971, when he discharged plaintiff as cured. The insurer paid workmen's compensation benefits at the rate of $12.00 per week through the date of discharge and also paid medical expenses incurred by plaintiff.
Plaintiff filed suit against the employer and insurer contending that, as a result of the injuries sustained in the accident described above, he is totally and permanently disabled, that he is entitled to compensation benefits at the rate of $49.00 per week as well as medical expenses, and that the failure to pay plaintiff additional benefits following February 19, 1971 was arbitrary and unreasonable, thus entitling plaintiff to penalties and an attorney's fee.
The employer and insurer answered plaintiff's suit, generally denying any additional liability to plaintiff for compensation or medical expenses.
In the trial court judgment was entered in favor of employer and insurer dismissing plaintiff's suit. From this adverse judgment, plaintiff has appealed.
The primary issue to be decided is whether plaintiff is totally and permanently *591 disabled as a result of the accident of December 15, 1970. If decided affirmatively, then the questions of rate of compensation and penalties and attorney's fee must be considered.
The only lay testimony heard in the trial court was that of plaintiff, his wife, his daughter and a neighbor.
Plaintiff testified that he was 55 years old at the time of the trial, that his wages were $20.00 per day, and that he worked every Tuesday. He described the accident as outlined above and described the injuries inflicted on him by the bull as follows:
"... he run at me and hit me in the lower part of my back and I was trying to get on the fence and then he whipped me from mywhen I finally got up on the fencewell, he whipped me on my legs, on the bottom part of my legs and the top part of the back of my legs." (TR. 78).
He also described his condition following the accident, his examination and treatment by various physicians and his condition at the time of trial which he contends to be disabling relative to the duties of his former employment. According to plaintiff, his disability consists of pain in the lower part of his back and inability to walk without pressure and swelling in his feet and ankles. He had previously complained of pain in his chest but stated: "My chest finally got better" (TR. 93). Plaintiff testified that he had had no back trouble prior to the accident. He stated that his only income at the time of trial was $105.00 a month from welfare but that he was self-supporting prior to the accident.
Plaintiff's wife, daughter and neighbor testified to the effect that plaintiff drags about and that he complains of pain in his legs and back.
The only other evidence in the record is that of various physicians who either treated or examined plaintiff. It will be reviewed below.
The only doctor who testified in person was Dr. Brown. Unfortunately this physician was called to court directly from his office without prior notice and he mentioned that he would have preferred to have had time to go over his notes.
Dr. Brown described the initial visit and his subsequent examination and treatment of plaintiff. While Dr. Brown's testimony tended to minimize the injuries plaintiff sustained in the accident, we note these important findings in Dr. Brown's testimony concerning various visits by plaintiff to this physician:
December 21, 1970: Pain in chest.
December 26, 1970: Tingling in foot and leg from muscle spasm.
January 4, 1971: Chest sore.
January 11, 1971: Pain and soreness in chest.
January 23, 1971: Catch in left chest and sore hip.
February 8, 1971: Pain in hip, pain in back.
February 19, 1971: (Released).
Dr. Brown's testimony is somewhat contradictory in itself. He stated that Mr. Farris "... had no abrasions or contusions visible in his chest" (TR. 142), and "... no evidence of any chest injury when he was initially seen" (TR. 148). Yet his report rendered March 3, 1971, diagnosed "Severe contusions left leg, ankle, thigh, right leg and chest." (D-1, emphasis added).
It is also noteworthy that Dr. Brown stated he did not x-ray plaintiff's chest when he x-rayed plaintiff's left leg, indicating that this was done subsequently. However, two x-rays of Mr. Farris' chest, introduced as part of P-3, have the date December 18, 1970, the same date as the x-ray of his leg. Dr. Brown tried to relate plaintiff's chest pain to a later visit to his office and repeatedly stated that plaintiff did not complain of chest pain on his first *592 visit, but, since contusions were found on plaintiff's chest and x-rays were made of his chest three days after his first visit and prior to his second visit, some complaint or problem must have been presented relative to his chest. In his examination and treatment, Dr. Brown apparently overlooked the "... healing fractures of the sixth and seventh ribs ..." found by Dr. Kirgis less than four months later.
Dr. Brown testified that plaintiff's severe varicose veins "... aggravated the trauma." (TR. 146). He stated that plaintiff had bi-lateral grade three varicose veins.
We consider very significant the fact that Dr. Brown also testified that plaintiff complained of "... tingling in his foot and leg" (TR. 177) on the 26th of December, 1970, and that the most probable cause of that was muscle spasm and the most probable cause of the muscle spasm was trauma; this testimony is of course compatible with Dr. Kilkenny's and Dr. Prescott's later findings, which will be noted below.
In the report of Dr. Homer D. Kirgis, a neurosurgeon at Ochsner Clinic, introduced into evidence as P-1, Dr. Kirgis states that he examined Mr. Farris on April 7, 1971; that Mr. Farris complained of pain in the low back, pain in his legs and feet, and pain in the right side of the chest. On page 2 of his report he states that roentgenograms revealed:
"Bordeline narrowing of the lumbosacral disc space posteriorly.... A small spur is present at the anteroinferior border of L-5"
Dr. Kirgis also noted healing fractures of the sixth and seventh ribs with some callous formation. However, Dr. Kirgis concluded that plaintiff did not have any type of neurosurgical problem.
The report of Dr. Hubert L. Prevost, a general surgeon, who examined Mr. Farris on March 16, 1972, on behalf of defendant, was introduced into evidence as P-2. Dr. Prevost reported as follows:
"The x-rays of the lumbosacral spine and pelvis revealed changes consistent with early degenerative arthritis."
He made the following diagnoses:
"1. Chronic lumbar strain, left side
2. Degenerative arthritis of the lumbosacral spine
3. Bilateral varicose veins
4. Bilateral talipes valgus
5. History of rib fractures
6. History of severe contusions of the lower extremities"
Dr. Prevost stated in his report that the back strain "... could very well have been related ..." to the injuries suffered in the accident.
Dr. Thomas E. Kilkenny, a resident at Huey P. Long Hospital in Pineville, Louisiana, testified in his deposition that he is a third year resident in orthopaedic surgery; and that he first saw Mr. Farris on January 16, 1973, at the Emergency Room of the Huey P. Long Hospital. Mr. Farris complained at the time of pain in his low back and lower extremities. He testified that he gave Mr. Farris a Spurling test, which is an objective test of injury, and that it was positive for low back pain. He also found that Mr. Farris had a decreased right Achilles ankle jerk, which he said would be most difficult for plaintiff to simulate. From x-rays he noted that Mr. Farris had a narrowed lumbosacral junction at the L-5, S-1 interspace. He also noted a traction spur at this level. Dr. Kilkenny "... concluded that he had degenerative disk disease at the L-5, S-1 level with instability at the same level." (Dep. 8). Dr. Kilkenny stated that Mr. Farris' injuries could be related to his accident with the bull. He prescribed bed rest, analgesics and muscle relaxants for Mr. Farris. He was next seen on February 16, *593 1973 by the Chief Orthopaedic Resident at the hospital, Dr. Russell Levy, the appointment having been made by Dr. Kilkenny. Dr. Levy admitted him to the hospital at that time, and Dr. Kilkenny saw him on February 17, 1973. Dr. Kilkenny then found muscle spasms and decreased motion but felt that Farris had improved because of the bed rest at home. Mr. Farris was then placed in pelvic traction.
We conclude from the deposition and reports of these doctors that they are not in substantial conflict. Dr. Kirgis noted the spur and narrowing at L-5 later found by Dr. Kilkenny. Apparently, Dr. Brown did not notice plaintiff's fractured ribs during his treatment, but they almost certainly resulted from the severe chest contusions he sustained in the accident. This tends to cast some doubt on his finding that Farris was "cured" on February 19, 1971. Dr. Prevost found a chronic back strain quite possibly related to the accident. As Dr. Kilgenny pointed out, although Dr. Kirgis stated that Mr. Farris had no neurosurgical problem at the time of his examination,
"... one must distinguish between neurological problems and mechanical problems." (Dep. 18).
As he elaborated:
"In degenerative disk disease of the lumbar spine most of the problems are what we call mechanical in nature. That is, they involve the disks themselves and the posterior elements and joints. This is represented either by arthritis of these joints or degeneration and narrowing of the disk spaces themselves. This in itself can cause mechanical back signs which are manifested by spasm, decreased range of motion, vague pain in the thighs, pain in the hips. This is to be distinguished from neurological symptomatology in the lumbrosacral spine, which is most often interpreted by neurosurgeons, and this is in reference to radicular findings or nerve root findings whereby a nerve function is compromised, thereby producing somewhat different findings, as for example atrophy, decreased reflexes, sensory losses and muscle weakness. These seem to be two separate and distinct classifications of lumbar disk disease or two history patterns." (Dep. 26, 27).
* * * * * *
"... because neurosurgeons tend only to note neurological disease and tend to not ignore but somewhat de-emphasize the mechanical problems." (Dep. 29).
Dr. Kilkenny stated that he had to assume from Mr. Farris' history that his preexisting degenerative disk was aggravated by his accident.
All of the medical testimony, except that of Dr. Brown, was by deposition and report. The Court of Appeal is in as good a position as the trial court to weigh evidence which is introduced in written form and not in oral testimony. Abu Ali v. Guillory, 271 So.2d 882 (La.App. 4 Cir. 1973).
As to the testimony of Dr. Brown, his failure to find and treat plaintiff's fractured ribs suggests that Dr. Brown underestimated the severity of plaintiff's injury. Under our analysis of the medical evidence the great weight the trial court attaches to Dr. Brown's testimony, as set forth in the reasons for judgment, is questionable. We cannot agree with the statement in the trial court's reasons for judgment that plaintiff's "... complaints of pain and of disability, however, are not supported by the evidence of the medical doctors and,..., medical evidence tends to contradict the claims and the testimony of the plaintiff." (TR. 42). On the contrary we find that, viewed as a whole, the medical evidence indicates that plaintiff continues to be disabled. There is no question that plaintiff has not returned to his former employment at the sale barn.
After reviewing the medical testimony, we find well established the conclusions that: (1) the plaintiff sustained severe *594 trauma in the accident of December 15, 1970, at least some of which (the fractured ribs) was not discovered by the physician who treated him immediately after the accident; (2) at the time of trial, plaintiff was disabled; and (3) there is no evidence of any injury to plaintiff other than the accident at the sale barn.
The lay testimony in the record corroborates plaintiff's claim of continual pain in his legs and back.
This case, we find, falls under the doctrine followed in the very recent case by Sanders, C. J., of Johnson v. Travelers Insurance Co., La. 284 So.2d 888 (1973). We have here an unquestioned accident and a disability. Since no intervening cause has been shown, it is presumed that the accident caused the disability. Also see Allen v. Milk Haulers, Inc., 278 So.2d 871 (La.App. 1 Cir. 1973); Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (1969).
We believe that the trial court committed manifest error in failing to award plaintiff compensation for total and permanent disability.
Having found plaintiff to be totally and permanently disabled and thus entitled to payment of workmen's compensation benefits, we must now consider his rate of compensation and the question of penalties and attorney's fee.
The evidence is undisputed that plaintiff was employed one day per week at daily wages of $20.00. Under the well established doctrine of Jarrell v. Travelers Insurance Company, 218 La. 531, 50 So.2d 22 (1950), an employee working only one day a week is entitled to be paid compensation computed on the basis of a six day working week.[1] This point has not been raised previously either in the trial court or in this court, and no complaint was made to the employer and the insurer concerning the payment of compensation at the rate of $12.00 per week. For compensation purposes, plaintiff had a weekly wage of $120.00 and the benefits must be calculated on that basis. His weekly wage, therefore, would be more than enough to entitle him to the maximum rate, which at the time of plaintiff's accident was $49.00. LSA-R.S. 23:1202; as amended by Acts 1968, Ex.Sess., No. 25, Section 2. The period of compensation for permanent and total disability is 500 weeks. Therefore, we conclude that plaintiff is entitled to a judgment for weekly compensation benefits and medical payments, according to the law, for a period of not more that 500 weeks beginning December 15, 1970.
On the question of penalties and attorney's fee, we find that there has been a serious dispute as to the plaintiff's disability. The insurer was informed by the then treating physician, Dr. Brown, that plaintiff had recovered. Accordingly, plaintiff is not entitled to penalties or attorney's fee relating to the period subsequent to his release by Dr. Brown on February 19, 1971.
There remains the question of payment by the insurer of compensation only in the amount of $12.00 per week from the date of the accident until the date of the release by the physician. We have been unable to determine on what basis the figure of $12.00 was paid. In any event, as previously noted, no objection was raised on behalf of plaintiff and no demand has ever been made against the insurer for compensation at a different rate, as far as the present record indicates. In fact, no issue has been made and no specification of error has been attributed to the subject of the weekly compensation rate; therefore, we cannot conclude that the insurer was arbitrary and capricious in failing to pay plaintiff at the rate of $49.00 from the date of the accident, although plaintiff would be entitled to recover that amount *595 under our judgment, subject to a credit for compensation previously paid.
For the foregoing reasons, the judgment of the trial court is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Archie T. Farris, and against defendants, Milburn J. Ducote, d/b/a Coltharp's Commission Barn and Argonaut Insurance Company, jointly and in solido, for workmen's compensation benefits at the rate of $49.00 per week not to exceed a total of 500 weeks subject to a credit for compensation previously paid, and for medical benefits as provided by law. Costs of the appeal as well as the costs in the trial court are taxed against defendants.
Reversed and rendered.
FRUGE, J., dissents and assigns written reasons.
FRUGE, Judge (dissenting).
I am of the opinion that the majority has erred in the following respects.
Under our jurisprudence, plaintiff must prove the work-related disability by a preponderance of the evidence. It is incumbent upon the plaintiff to establish the existence of such disabling condition to a reasonable certainty and by a clear preponderance of testimony. Johnson v. R. P. Farnsworth & Company, 186 So.2d 405 (La.App. 1st Cir., 1966); Oliver v. T. & C. Contractors, 264 So.2d 225 (La.App. 3rd Cir., 1972).
The majority has failed to heed the well acknowledged rule that the trial court is in the best position to evaluate the credibility of witnesses and to make the determination as to the appropriate weight to be given. Mamon v. Western Waterproofing Co., 243 So.2d 105 (La.App. 1st Cir., 1970); Oliver v. T. & C. Contractors, supra. I am unable to conclude that the trial court erred in its "evaluation of the truthfulness of the claimant's complaints in light of the entire record of medical and lay testimony ...." Johnson v. Travelers Insurance Co., 284 So.2d 888, 891 (La.1974).
I have not found the "presumption of disability", as envisioned in the case of Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3rd Cir. 1969), to be applicable in this case as the facts do not support the commencement of the back symptomatology as of the time of the accident. Also, see White v. Caldwell Contractors, Inc., 276 So.2d 762 (La.App. 3rd Cir., 1973).
Although the plaintiff has established the existence of some back disability, the evidence preponderates against the causal connexity of this disability and the accident of December 15, 1970. The lower court did not manifestly err in its determination that "the plaintiff failed to establish the existence of further disability or injury which was caused, aggravated, or related to the accident of December 15, 1970, by a preponderance of the evidence which is required by law."
For the above and foregoing reasons, I respectfully dissent.
NOTES
[1] Act 25 of 1968, Ex. Session, amended LSA-R.S. 23:1021(11) concerning calculation of wages but the amendment does not appear to cover the instant factual situation.