426 So.2d 701 (1982)
TOUCHDOWN REAL ESTATE, INC.
v.
Charles A. HOLTON, et al.
No. 82 CA 0328.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Rehearing Denied February 17, 1983.[*]
*702 Paul L. Billingsly, Luling, for plaintiffappellant.
Alfred W. Spiller, Ponchatoula, for the Holtons.
Michael R. Tregle, Hammond, for the Givens.
Before EDWARDS, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
On July 3, 1980, Mr. and Mrs. Charles A. Holton, defendants and purchasers, executed an agreement to purchase a lot and two-story dwelling on Blood River Road, Springfield, Louisiana, for $43,400.00. Mr. and Mrs. Newton E. Givens, defendants and sellers, accepted the offer. The parties signed the agreement at the offices of Touchdown Real Estate, appellant, in the presence of Mary D. Wall, a real estate agent and appellant's employee who had been instrumental in bringing the parties together. At the subsequent closing of the sale on August 4, 1980, a dispute arose between the Givens and the Holtons concerning an insurance escrow account, so the sale was not passed. A second and then a third closing were scheduled, but the sale was never consummated.
Appellant filed suit on September 5, 1980, to collect its real estate commission provided in the contract, which was 10% of the purchase price, or $4,340.00. The Holtons filed a reconventional demand to recover the $3,000.00 deposit they had made. The trial judge awarded judgment in favor of both defendants, and granted the reconventional demand of the Holtons, ordering the return of their deposit. From this judgment, appellant perfected this suspensive appeal.
The purchase agreement, signed by both defendants, is a valid contract, and as such it provides the law between the parties. La.C.C. art. 1945. It contains the following language:
"Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated to pay all fees and costs incurred in enforcing collection and damages. Purchaser agrees to pay Realtor's commission in the event purchaser fails to perform under this contract."
Penalty provisions in purchase agreements which provide contingent liability for a defaulting purchaser for the real estate commission are legally enforceable. Wendel v. Dixon Real Estate Company, 232 So.2d 791 (La.App. 4th Cir.1970), writ denied, 256 La. 249, 236 So.2d 29 (1970). A sale need not be consummated for the agent to earn his commission. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977).
Appellant argues that the Holtons are liable for its real estate commission, as the defaulting purchasers. In the alternative, appellant maintains that both defendants should be held responsible for its commission, as the failure of the sale was not due to any fault on its part.
The trial judge, in his written findings, stated:
"Having reviewed my notes, the pleadings, the stipulations entered into at *703 hearing, the exhibits and the memorandum (sic) of counsel, it is the opinion of this Court that there was never a meeting of minds between the prospective purchaser and the prospective seller over the amount in the escrow account. This was an essential part of the agreement. The agreement form, which was prepared and furnished by the plaintiff[`s] agent, was ambiguous because the agent failed to complete that portion of the form by deleting one of the options as to the escrow account under paragraph one (d)."
The sole issue on appeal is whether the trial court correctly concluded[1] that there was no meeting of the minds as to the escrow account and the completion of the sale, thereby relieving defendants of their obligation to pay appellant's commission. Initially, we note that we have found no basis for holding the sellers liable to appellant, as the failure of the sale was in no way attributable to them. Therefore, we will direct our discussion to appellant's claim against the purchasers, the Holtons.
At trial, the parties stipulated to the following facts:
1. Mr. and Mrs. Newton E. Givens executed a listing agreement with appellant dated April 24, 1980, authorizing appellant to solicit prospective purchasers for the two-story dwelling and lot owned by them.
2. The Holtons and Givens executed a purchase agreement at the offices of appellant, wherein the Givens agreed to sell and the Holtons agreed to buy said property.
3. Appellant was the only realtor involved.
4. Appellant was the "procuring cause" of their agreement to purchase.
5. The Holtons, the Givens, and Mary D. Wall met on August 4, 1980, to close the sale; however, a dispute arose regarding the transfer of the insurance escrow.
6. The parties agreed to reschedule the closing, at the request of the Holtons, in order to allow them opportunity to find their own homeowners insurance.
7. The Givens made formal written tender of title pursuant to the purchase agreement.
8. The closing was reset for August 22, 1980, and the Givens agreed and informed the Holtons, that they were willing to forfeit the escrow, in an effort to consummate the sale.
9. The Holtons failed to appear at the August 22 closing, and at the request of their counsel, the closing was rescheduled for September 3, 1980.
10. The Holtons again failed to appear and have refused all demands to perform under the purchase agreement.
Counsel for both sides agreed to submit the matter on these stipulations and on memoranda, and they offered as evidence the deposition of Mrs. Holton and the pleadings.
The Holtons appeared at the original closing fully expecting to purchase the subject property, but a dispute arose over the escrow account. The Holtons had assumed that the sales price included the insurance escrow, while the Givens were expecting to be reimbursed for any unearned premiums. The agreement contained the following recital:
"1 (d) The insurance policies, if paid through escrow, and the escrow account held by the mortgagee (will be conveyed without further charge) (will be prorated)."
Neither the parties nor appellant's representative, Mary Wall, crossed out the inapplicable provision of 1(d), thereby provoking the disagreement at the first closing.
*704 Mrs. Holton's deposition was entered into evidence, and it was stipulated that Mr. Holton's testimony would be the same. It is clear from this deposition that the Holtons had full intentions of continuing with the sale, even after the initial disagreement as to the escrow. Mrs. Holton testified by deposition as follows:
"Q. Well, ma'am, you testified earlier that you'd agreed to go ahead with the closing, providing you could go out and get a satisfactory quote on insurance?
A. On insurance, yes. That's what everybody hadthey had ...
Q. All right. You all came to that agreement on the day of the closing?
A. Yes, sir.
Q. Okay. You didn't go through closing but at that point you and your husband agreed that you were going to go ahead with the sale but you wanted to go get some insurance somewhere else, if you could, cheaper?
A. Uh huh. Yes, sir.
Q. All right. And then later in the week, your husband, who had been transferred in his job to Houston, decided, well, having given it further thought, he didn't want to do it after all?
A. Yes.
With respect to the second closing date, Mrs. Holton stated:
Q. And why was it that you and Mr. Holton did not go to that closing?
A. He informed whoever called from Touchdown Real Estate that he was not going through with the deal.
Q. And why is that, ma'am?
A. Because everywell, because of the insurance and then the broker told me I had to buy the house.
Q. Now, you had previouslyyou testified earlier that you agreed to resolve the insurance matter?
A. That was before I was told I had to buy the house.
And finally:
Q. So that the only reason that you did not purchase this property is that someone called you and told you you had to do it?
A. I called the broker and then he told me I had to buy it.
Q. And you decided that you weren't going to do it?
A. In the first place, I did not like his tone of voice and in the second place, we would have been willing to go through with the deal had he not told me I had to buy it. [Emphasis ours]
It is clear from this testimony that the Holtons agreed to finalize the sale, despite any ambiguity concerning the escrow. They simply wanted a chance to find cheaper insurance, and the Givens agreed to allow them to do so. Not only did the Holtons find cheaper insurance, but for the second closing, the Givens agreed to forfeit the escrow account in order to consummate the sale, and so informed the Holtons. Had the Holtons been in good faith in fulfilling their agreement to purchase the property, certainly any problems arising from the ambiguity in the purchase agreement had been resolved by subsequent events, and there was nothing left to prevent the completion of the sale.
Around the middle of August, Mr. Holton was informed by his employer that he would be transferred to Houston. He had heard rumors of this possibility even before this time, and this development obviously influenced the Holtons' refusal to go through with the sale.
After careful review of the entire record, we conclude that the Holtons, as the defaulting purchasers, are liable to appellant for its commission, under the express terms of the contract. The amount of the commission provided in the purchase agreement was $4,340.00. Appellant is holding the Holtons' deposit of $3,000.00 and may keep same. It is entitled to an additional $1,340.00. Accordingly, judgment is rendered in favor of Touchdown Real Estate, *705 Inc., and against Mr. and Mrs. Charles A. Holton for $1,340.00.
All costs of this appeal are assessed to the Holtons, together with interest from date of judicial demand until paid.
REVERSED AND RENDERED.
NOTES
[*] Edwards, J., is of the opinion a rehearing should be granted to allow plaintiff to collect attorney feesI think the defendant failed to comply with the "terms of this office."
[1] The matter was submitted on a stipulation, together with documentary evidence. The manifest error rule, therefore, is inapplicable. Langford v. Calcasieu Parish Police Jury, 396 So.2d 956 (La.App.3rd Cir.1981); Farris v. Ducote, 293 So.2d 589 (La.App.3rd Cir. 1974); writ refused, 295 So.2d 814 (La.1974); Allstate Insurance Company v. Shemwell, 142 So.2d 866 (La.App.2nd Cir.1962); Terrell v. American Automobile Insurance Company, 125 So.2d 189 (La.App.3rd Cir.1960).