SHORTESS, Judge.
Mary Bob (plaintiff) was employed by McDermott Corporation (defendant) as a sandblaster painter and was earning $7.25 per hour. On July 13, 1981, while stacking handrails, she hurt her back. All medical bills and compensation were paid through September 20, 1981. Compensation was terminated on the basis of medical reports submitted to defendant which indicated that plaintiff was able to return to work. Plaintiff brought suit for workers’ compensation benefits. After trial, her suit was dismissed. The trial court found that plaintiff had failed to establish her case by a preponderance of the evidence. Plaintiff appeals, seeking to reverse that finding.
FACTS
After plaintiff felt pain in her back, she went to the nurses’ dispensary and got heat treatment and pain pills. She went back to work the next day and worked the week out. On Monday she returned to the dispensary, saw the nurse, and was re *513 ferred to Dr. Walter H. Daniels, who hospitalized her at Lakewood Hospital in Morgan City on July 27, 1981. His admitting diagnosis was acute lumbar sprain. She was discharged from Lakewood on August 14, 1981. While hospitalized, she was seen on July 30 in consultation by Dr. Lawrence J. Russo, an orthopedic surgeon. Russo found mild spasm and moderate restriction of motion. As per his order, a lumbar myelogram was performed which was negative for disc pathology. After her release from the hospital, Dr. Russo saw plaintiff on August 26 in his office and felt that plaintiff was manifesting radicular symptoms, probably stemming from nerve root swelling, so he referred plaintiff to Dr. Carl F. Culicchia, a neurosurgeon in New Orleans, Louisiana. Dr. Culicchia saw plaintiff on August 28. His examination was negative for any signs of neurological injury. He found no spasm, a normal lor-datic curve, but he elicited contradictory findings when testing plaintiff for limitation of motion. His diagnosis was no sign of a neurological injury, and it was his opinion that from a neurological point of view, plaintiff could return to work.
On plaintiffs September 16 office visit, Dr. Russo found a full range of motion, no spasm, and discharged her as able to work. In response to questioning relative to the basis for his opinion that there was no disability as of September 16, Dr. Russo said:
Lack of objective findings, observation of this patient’s complaints over many visits, a lack of any positive finding on the myelogram to substantiate anything, which also did not substantiate anything as far as nerve root swelling was concerned. Lack of some improvement with complete bedrest and physical therapy modalities. You’ve got to expect even a patient with a ruptured disc to have some complaints with this, and it just became more and more apparent to me that the patient wasn’t getting well at all, and I had serious question as to how much elaboration she was having upon her complaints.
After plaintiff was discharged as able to work by Dr. Russo on September 23, 1981, she saw Dr. Douglas Bernard, an orthopedic surgeon from Lafayette. Plaintiff had been referred to Dr. Bernard by Dr. Lheris-son Dumond, her gynecologist. Bernard’s examination was essentially negative. He found unrestricted motion, negative leg-raising tests, and no muscle spasm. Dr. Bernard thought that plaintiff was a malingerer.
Dr. Kenneth E. Vogel, a neurosurgeon practicing in New Orleans, saw plaintiff at her attorney’s request on November 24, 1981. He found limitation of motion in all directions and mild muscle spasm on the left. His diagnosis was chronic lumbo-sacral pain. He prescribed physical therapy which plaintiff took at the Physical Therapy Clinic of Franklin. Dr. Vogel saw plaintiff again on December 22, 1981, and she complained of increased low back and left leg pain. Dr. Vogel offered hospitalization for a full evaluation which she accepted. Subsequently she entered Mercy Hospital on January 19, 1982. A disco-gram was performed which revealed evidence of deterioration within the disc but no herniation. Based on that test, Dr. Vo-gel felt that plaintiff’s problem was secondary to a lumbar cyst syndrome and performed a lumbar facet rhizodomy. The procedure was performed by severing the nerves of the lumbar facets from L-2 through L-5 on both sides with radio frequency current. Its purpose was to alleviate plaintiff’s low back pain. After the operation, plaintiff’s recovery was uneventful, and she was discharged after three days. Plaintiff was seen on March 25, 1982, some two months after surgery, and she complained of intermittent burning pain in the right lumbosacral and left leg region. Dr. Vogel’s examination at that time continued to reveal mild limitation of motion with muscle spasm, but he considered her to be progressing satisfactorily. She has been on Darvocet-N for pain since her discharge. Dr. Vogel, at the time of his deposition on March 25, 1982, was of the opinion that plaintiff was disabled and had been since the date of her accident, but *514 he was unable to say when she would be able to return to work.
Defendant had plaintiff re-examined by Dr. Culicchia on April 22, 1982. His findings were the same as before — negative in all aspects. He indicated that plaintiff told him that the operation did not help her symptoms, and Dr. Culicchia was of the opinion that the procedure done by Dr. Vogel was unnecessary, and he would not have done same.
On June 2, 1982, Dr. Vogel submitted a report which updated his deposition. At that time, he found only mild limitation of motion and no spasm. However, he felt that plaintiff had a 10% to 15% impairment of the body as a whole as a result of this accident and that she should engage in no activity which required her to lift any weight greater than 35 pounds.
In analyzing this medical evidence, all of which was submitted to the court by way of deposition and/or report, the trial court made the following observations in its written reasons for judgment:
The testimony of four doctors was presented to the Court. Only one found the plaintiff to be disabled at any time after September 21, 1981. Dr. Vogel’s [finding] of disability was based primarily upon Mrs. Bob’s complaints of pain and subjective testing. He found no disc pathology or problems with the vertebrae, except for a possible lumbar facet syndrome which he treated by performing a rhizotomy, which the Court understands to be a severing of a branch of a nerve root with a radio frequency current to allay pain. This is accomplished by the insertion of a fairly large needle into the lumbar area.
Three other physicians all found that-she was not disabled or that any disability which she had suffered had ended by September 21, 1981.
Dr. Russo, the original treating physician saw plaintiff from the end of July to the middle of September, 1981. He originally found she had some objective symptoms of muscle spasms along with complaints of pain, even though myelogram and x-rays were normal. She was hospitalized and received conservative treatment. In each of his examinations, contrary to Mrs. Bob’s testimony that she talked about pain in the leg, there was no mention of sciatica. Subsequently, Dr. Russo certified that Mrs. Bob was able to return to work. Although Mrs. Bob was still complaining of pain at that time, Dr. Russo stated that he simply did not believe her complaints, based on the fact that there were no objective findings and that the patient claimed that she did not improve even with complete bed rest and physical therapy.
In August of 1981, Dr. Culicchia saw Mrs. Bob and certified that she was able to return to full working activity. He also noted that Mrs. Bob did not complain of leg pain or radiation of pain into the legs, and when the leg-raising test was given by having the patient sit up, there was no pain at all.
Dr. Bernard’s ultimate findings were basically to the same effect as those of Drs. Russo and Culicchia.
DISABILITY
Inasmuch as all the medical testimony came by way of deposition, the manifest error rule is not applicable to our review of the medical aspect of this case. Touchdown Real Estate, Inc. v. Holton, 426 So.2d 701 (La.App. 1st Cir.1982.) See Conrad v. Jack Donahue Contractors, Inc., 450 So.2d 1035 (La.App. 1st Cir.1984).
We note that the primary predicate upon which Doctors Russo, Culicchia and Bernard based their opinions that plaintiff was able to return to work was the lack of any objective findings of disability. Dr. Vogel, however, found mild muscle spasm on the left without scoliosis on his first examination on November 24, 1981. When he saw plaintiff subsequently on January 19, 1982, he again found spasm. He admitted her to the hospital on that date and performed a discogram which revealed deterioration within the disc but no evidence of a herniation.
*515 It is a well settled rule of law that the positive findings of medical experts are to be afforded greater weight than negative findings as to the existence or non-existence of a particular condition. Campbell v. Luke Construction Company, 465 So.2d 688 (La.1985). The trial court erred when it found that Dr. Vogel’s finding of disability was primarily on plaintiffs complaints of pain and subjective testing. Our review of the record shows that Vogel’s finding was based upon muscle spasm, limitation of motion and a discogram which revealed deterioration within the disc. This evidence should have been accorded weight, especially since the record also indicates that plaintiff had a good employment history before her accident, has not worked since the accident, and her complaints have continually manifested themselves since the accident.
We find that this case must be remanded to the trial court so additional proceedings can be held to determine the exact extent of plaintiff’s disability. In remanding, we note that additional medical evidence has been taken since the date of trial which should be very helpful in resolving the extent of disability.
DEPOSITION OF DR. F.T. FRIEDBERG, CLINICAL PSYCHOLOGIST
Plaintiff complained about the refusal of the trial court to admit Dr. F.T. Friedberg’s deposition into evidence. That deposition was taken to elicit an opinion from a psychologist as to whether plaintiff was a malingerer. The trial court found that Dr. Friedberg’s deposition was irrelevant and said in its reasons for judgment:
The Court is as capable of drawing a conclusion as to a witness’ veracity and credibility as is a psychologist and Dr. Friedberg’s testimony in this regard is therefore irrelevant.
This ruling was not clearly erroneous.
MEDICAL EXPENSES
No medical expenses have been paid since September 20, 1981. In view of our holding that the record supports a finding of disability after that date, the following expenses should be paid, and we cast defendant for same at this time:
Physical Therapy Clinic of Franklin 200.00
Mercy Hospital 2,423.93
Dr. Kenneth Vogel’s services through 3/25/82 2,250.00
Drugs 73.44
PENALTIES AND ATTORNEY FEES
Because of the conflict in medical opinions, we will not cast defendant for penalties and attorney fees. We specifically note that after plaintiff’s operation at Mercy Hospital in January of 1982, defendant obtained an up-to-date opinion from Dr. Culicchia who maintained his opinion that plaintiff was not disabled and was able to return to work. He also felt that Dr. Vo-gel’s surgery was unnecessary.
CONCLUSION
For the reasons stated, the trial court’s judgment which found the Friedberg deposition inadmissible is affirmed; that part of the judgment which found, no disability is reversed and the matter is remanded for proceedings consistent with this opinion; and further, there is judgment in favor of plaintiff and against defendant for medical expenses as enumerated above for $4,947.37, and reserving to plaintiff her right to recover all additional expenses reasonably incurred or to be incurred in the future; all costs are taxed to defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED. REMANDED IN PART.