420 So.2d 512 (1982)
Cynthia BOOTH, Plaintiff-Appellant,
v.
POTASHNICK CONSTRUCTION COMPANY and State of Louisiana, Through the Department of Transportation and Development, Defendants-Appellees.
No. 14974.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1982.
Rehearing Denied October 29, 1982.
Writ Denied December 20, 1982.
*513 Piper & Brown, Inc. by Robert E. Piper, Jr., Shreveport, for plaintiff-appellant.
John W. King, Baton Rouge, for State of La., through the Dept. of Transp. and Development, defendant-appellee.
Before JASPER E. JONES, FRED W. JONES and NORRIS, JJ.
FRED W. JONES, Judge.
Plaintiff appeals a judgment dismissing her suit against the State of Louisiana, through the Department of Transportation and Development ("State"), for damages resulting from injuries sustained when plaintiff drove her car from the hard surface of a state highway onto an excavated shoulder in a highway construction zone. It is asserted that the trial judge erred in (1) finding that the defendant State was free of negligence because it had properly installed and maintained warning signs in the construction area and (2) finding that, though the doctrine of strict liability was applicable, plaintiff's "victim fault" barred her recovery.
For the reasons hereinafter set forth, we affirm.
In March 1977 the Potashnick Construction Company, under a contract with the State, began work on an interloop or I-220 construction project in south Shreveport. This project primarily involved building a bridge for the Interloop expressway over Louisiana Highway 171 (Mansfield Road) and widening the shoulders of the state highway. The latter work required excavation of the shoulders of the highway for a distance of .33 miles, or about 1700 feet.
Highway 171 is a heavily traveled thoroughfare in the described area of Shreveport. Prior to the construction in question it was a four lane hard surfaced road, with two lanes for northbound traffic and two lanes for southbound traffic. The traffic lanes were wider than usual, measuring 13½ feet width per lane rather than the customary 12 feet width.
At about 5:40 o'clock on the morning of October 23, 1978, Cynthia Booth, a 20 year old female, was alone in her car driving south in the outer lane of Highway 171 at a speed of about 45 miles per hour, traveling to her place of employment, approaching the north limits of the above described construction zone. Miss Booth had never driven down this highway before, nor did she *514 have prior knowledge of the construction work in progress. At that particular time the highway shoulders had been excavated, along the .33 mile project length, to a depth that created a drop-off of some seven inches below the road hard surface.
As Miss Booth entered the construction zone, traveling in the outer southbound traffic lane which at that point gradually curved west or to her right, the right front tire of her vehicle left the paved surface of the highway, dropping off into the excavated area of the road shoulder. Reacting to this development, Miss Booth turned her automobile back to the left, traversed both southbound traffic lanes and turned over twice in the grassy median. As a result of the accident, Miss Booth sustained severe, disabling injuries.
This action for damages was filed by Miss Booth against Potashnick Construction Company, its insurer, and the State. After a settlement was effected with the construction company and its insurer, the suit was dismissed as to these defendants. The case proceeded to trial on the merits against the State in October 1981.
In oral reasons for judgment the trial judge found that the State, because it had properly positioned and maintained signs warning of this construction work, was not guilty of negligence which caused Miss Booth's accident. However, the trial court then proceeded to find the State strictly liable under La. Civil Code Article 2317,[1] but denied recovery to plaintiff because of her fault.
Preliminary to discussing the applicable law, we note the obviousthat this case involves a road shoulder excavated in connection with a construction project and not a road shoulder which became hazardous because of faulty maintenance.
Adverting now to pertinent legal principles, it is axiomatic that the State has a duty to maintain its highways in a reasonably safe condition for public travel, which duty encompasses the maintenance of highway shoulders in a safe condition. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Brandon v. State, through Dept. of Highways, 367 So.2d 137 (La.App. 2d Cir. 1979). As we pointed out in Brandon:
"[R]ecognizing the necessity of construction work in the maintenance of highways and that hazards will often necessarily exist during the course of construction, this duty is relaxed in connection with construction activities according to the reasonable necessities of the circumstances. The Department's [State Highway Department] duty during the course of construction is usually discharged by the giving of adequate warning. What constitutes adequate warning depends on the nature of the hazard to be guarded against."
It was noted in Von Cannon v. State, Dept. of Highways, 306 So.2d 437 (La.App. 3rd Cir. 1975) that:
"[T]here is no hard and fast rule as to the types of warnings or safeguards [against dangerous highway conditions]. Warnings should be sufficient to alert the ordinary, reasonable motorist, having in view the probable traffic, the character of the road and the use reasonably to be anticipated (citation omitted). Safeguards should be commensurate with the danger."
The critical question here is: did the State fulfill its duty to exercise reasonable care in warning motorists of the dangerous road condition in this construction zone? See Am.Jur. (2d), Highways, Streets, and Bridges, § 397, pp. 792, 793.
According to witnesses testifying on behalf of the State,[2] at the time of the *515 accident the following warning signs faced Miss Booth as she approached from the north and then entered the construction zone: at a distance of about 2,000 feet from the beginning of the project a "Road Construction Ahead" sign on both sides of the southbound lanes; about 500 feet further south a "Road Construction 1500 Feet" sign, followed by "Road Construction 1000 feet" and "Road Construction 500 Feet" signs; at the beginning of the actual project, large signs, known as wing barricades, proclaiming the distance for which the project extended along the highway and stipulating a speed limit of 45 miles per hour; along the excavated area and marking the edge of the road, temporary warning devices consisting of delineators and sawhorse type barricades with flashing yellow lights.
On the other hand, plaintiff stated that the only warning sign she saw was the "Road Construction 1500 Feet" sign. In addition, she presented an array of witnesses who denied having observed, during the relevant time period, certain of the warning signs assertedly posted by the State.[3]
In its findings of fact, the trial court concluded that, at the time of the accident, the permanent advance warning signs, a "low shoulder" sign and the delineators were in place, warning motorists of the hazardous road condition. Since this determination was based primarily upon an assessment of witness credibility, a function uniquely within the province of the trial judge, we cannot say that he was clearly wrong in this fact-finding. Consequently, we agree with the trial judge that the State did not breach its duty to take reasonable measures to warn motorists of the dangerous highway condition. Therefore, the State was not guilty of negligence in this case.
As we have pointed out, after disposing of the negligence issue, the trial judge proceeded to find that the strict liability doctrine of Article 2317 governed the State's responsibility here because the thing causing the damage was in the State's custody, the excavated shoulder constituted a vice, and plaintiff's injuries were caused by the defect.
We do not agree with the trial judge on this strict liability issue. As a predicate for imposition of liability under Article 2317, the plaintiff must prove that "the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defectthat is, that it occasioned an unreasonable risk of injury to anotherand that his injury was caused by the defect." Jones v. The City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980).
As Judge Culpepper explained in Goodlow v. City of Alexandria, 407 So.2d 1305, 1308 (La.App. 3rd Cir. 1981), in determining the reasonableness or unreasonableness of the risk, we "should consider the probability and magnitude of the risk balanced against the utility of the thing alleged to be defective."
Does the excavation of a road shoulder in connection with a highway construction project create an unreasonable risk of harm to the public, thereby making the excavation a vice under Article 2317? In view of the obvious necessity of such road construction projects, we answer in the negative. Although it is conceivable that under certain circumstances the manner in *516 which a road construction project is carried out might create an unreasonable risk of harm to motorists, a blanket holding that all highway construction projects result in road defects, automatically requiring the application of strict liability under Article 2317, would be patently unreasonable. For example, under such a ruling the function of placing warning signs, rather than being a part of the State's positive duty to negate negligence, would simply be to prove victim fault as a bar to recovery of damagesbecause he ignored those warnings.
Consistent with this reasoning, we conclude that Sinitiere v. Lavergne, supra, and Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979), in which cases the State was deemed liable for failing to maintain highway shoulders in a safe condition, are inapposite.
We point out, however, that even if strict liability applied in this case, the record amply supports the trial judge's characterization of plaintiff's behavior as constituting "victim fault" which precluded her recovery. This determination by the trial court was based upon the finding of fact (not clearly erroneous) that plaintiff's driving of her car from the road's hard surface into the excavated shoulder area "required a positive action of hers to go off the inside where the forces [gravitational or centrifugal] were the other way ... on what was a very wide roadway, considerably wider than the average."
For these reasons, we affirm the judgment of the trial court, at appellant's cost.
NOTES
[1] Art. 2317.

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
[2] This is a summary of the substance of the testimony of: Donald Ambercrombie, the State's "earthwork" inspector on this project; George Garrett, State engineer who checked permanent signs on this job and kept a daily Project Diary which noted any missing signs; Victor Pavloff, Project Engineer for the State; Linuel Graddy, Jr., the contractor's project superintendent; and Leslie Cornett, Jr., the contractor's foreman on this job.
[3] Gwen Mattingly saw only the "Construction Ahead .33 Miles" sign; Gary Jewell saw only the advance permanent signs announcing "Road Construction 1500 Feet, 1000 Feet, and 500 Feet", and "Road Construction .33 Miles"; Debra Hensley observed the approach sign stating "Road Construction Ahead"; Gary McCarty saw caution signs as he approached the construction area, the barricade with the construction sign and speed limit sign, and flashing lights at nighttime; Gil Endicott saw only the road construction sign; Maggie Dixon saw only the road construction sign, barrels in the median area and the "Road Construction 1500 Feet" sign; Cheryl Barkerdriving her car just ahead of plaintiffobserved only an orange construction sign with some footage figure and a speed limit sign.