464 So.2d 357 (1985)
James H. QUINN, et ux., Plaintiff-Appellee,
v.
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Defendant-Appellant.
No. 83-949.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1985.
Rehearing Denied March 8, 1985.
Writs Denied May 3, 1985.
*359 Jerry L. Finley, Baton Rouge, for defendant-appellant.
Whitehead & McCoy, Charles R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Gist, Methvin, Hughes & Munsterman, H.B. Gist, III, Alexandria, for defendantsappellees.
Before FORET, STOKER, KNOLL, LABORDE and YELVERTON, JJ.
STOKER, Judge.
This is an appeal by the State of Louisiana, through the Department of Transportation and Development, from a trial court decision finding it negligent in maintaining a state highway and ordering it to pay damages to Mrs. Margaret Quinn, a driver injured in an accident on that highway. The State also appeals the trial court's dismissal from the case of Robert Machacek, the second driver involved in the accident, on the grounds he was not at fault.
This case involves a two-car accident which occurred on Louisiana Highway 6 on October 17, 1980. Mrs. Margaret Quinn was driving through rain in the westbound lane of the highway on her way from Pineville to Toledo Bend. About one-half mile west of the village of Robeline she entered an ascending curve to the right. At some point along the curve one or both of the right wheels of her car left the road surface and dropped to the shoulder. Mrs. Quinn tried several times to steer back onto the highway. There was some dropoff from the road to the shoulder, and Mrs. Quinn had trouble getting back on the road. When the car did regain the roadway, the vehicle was at an angle with the centerline of the road, and it was propelled into the eastbound lane where she was struck by an oncoming vehicle. Mrs. Quinn suffered various injuries as a result of the accident, including three broken ribs, broken clavicles, and a contusion to the head.
Mrs. Quinn and her husband brought this action against the State to recover her damages resulting from the accident, claiming there was a defect in the shoulder of the road. The State made a third party *360 demand against Robert Machacek, the driver of the second vehicle involved in the accident, for indemnity or contribution in the event he was found negligent.
The trial court granted Machacek's motion to dismiss after the plaintiffs and the defendant had put on their evidence. It then found "that the sole and proximate cause of this accident and the resultant injuries to Mrs. Quinn was the negligence of Department of Transportation and Development in failing to properly maintain the shoulder of Louisiana Highway 6 at the point of the accident." The plaintiffs were awarded general and special damages.
The State makes ten assignments of error which raise several issues which may be summarized as follows:
1) Was Mrs. Quinn negligent?
2) Was the State negligent?
3) Was Sylvanus Walker qualified as an expert in accident reconstruction and was his explanation based on the evidence?
4) Did the court err in admitting photographs taken two weeks after the accident or in admitting the entire deposition of Mrs. Quinn?
5) Did the court err in granting Machacek's motion for a directed verdict?
6) Did the court grant an excessive award?
We find that Mrs. Quinn and the State were both negligent. The court did not err in granting Machacek's motion for a directed verdict.

MRS. QUINN'S NEGLIGENCE

I.
In its first assignment of error the State contends that the trial court erred in ruling that Mrs. Quinn inadvertently left the roadway and was not negligent in doing so. The State's argument in this regard is most tenuous. Succinctly stated, it is that natural forces would cause Mrs. Quinn's vehicle to move to the left. Therefore, since she ran off the road on the right side, she must have steered it off the road. (The scientific argument is that when a vehicle is traveling in a curve to the right the centrifugal forces which act on the vehicle will cause the vehicle to move to the left and away from the right edge of the roadway.) Even granting this to be the case, it does not necessarily follow that the steering of the vehicle off the highway was an act of negligence which would bar recovery in this case. There is no evidence that her actions were not inadvertent. The State seeks to convince us that Mrs. Quinn over-steered her vehicle to the right and caused it to run off of the surfaced portion of the highway and onto the shoulder. The State characterizes such alleged over-steering as a "positive act" (discussed later in this opinion) in an effort to contra-distinguish such conduct from inadvertent acts. The argument is without merit.
The prevailing jurisprudence in Louisiana, Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979), holds that negligent driving on the part of a motorist who runs off the highway and encounters a defective shoulder caused by improper maintenance does not affect recovery. The reasoning applied in Rue is not limited to those situations in which the negligent or substandard conduct of the vehicle operator is inadvertent. In Rue the Supreme Court assumed the driver was negligent for purposes of deciding the case. All that is necessary under the rule of Rue is that the driver be unaware of the shoulder defect and the consequent danger presented. If the motorist is unaware, the motorist's right of recovery is unaffected in situations where the substandard conduct falls under the ambit of the rule. That rule stated in Rue and followed many times is:
"Under a simple `but-for' analysis the accident would not have occurred had either the Highway Department not been negligent in failing to maintain the shoulder or the plaintiff not been negligent (and for present purposes we assume her inadvertent meandering was negligence) in moving the vehicle onto the shoulder. But this does not conclude the inquiry. Focusing on plaintiff's `substandard' conduct *361 the question is whether the risk of injury from striking an unexpected, negligently maintained highway shoulder was a risk reasonably related to plaintiff's failure to drive entirely on the paved portion of the highway. We conclude that it was not. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on, or partially on, the shoulder.
"We conclude that plaintiff's conduct if indeed it was substandard is no bar to her recovery of damages occasioned chiefly because the Highway Department negligently failed to maintain a safe highway shoulder."
(The pronouncement in Rue was made at a time when contributory negligence acted as a bar to a plaintiff's right to recovery. Louisiana now follows the comparative negligence rule; a complete bar is not involved. LSA-C.C. art. 2323.)
We observe that over-steering to the right by motorists on a right hand curve (despite the centrifugal force to the contrary) is a common occurrence and we hold it is a foreseeable risk within the ambit of the rule laid down in Rue.
For the foregoing reasons the State's contentions as to alleged negligence of Mrs. Quinn in running off the highway are not relevant to the issues in this case. It is settled under Rue and cases which follow it that substandard conduct of a motor vehicle operator in running off the paved portion of a highway does not affect the right of recovery if the negligently maintained shoulders are a cause in fact of an accident which follows. With later interpretations to fit varying situations, the concept set forth in Rue has consistently been applied. One variation in the rule is that the substandard conduct of a motorist will affect recovery if the motorist is aware of a dangerous condition of a shoulder and fails to take proper precautions to avoid running off the highway. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) and Edwards v. State Dept. of Transp. & Devel., 403 So.2d 109 (La.App. 3rd Cir.1981), writ denied, 407 So.2d 733 (La.1981). The distinction is pointed out in Booth v. Potashnick Construction Company, 420 So.2d 512 (La.App.2d Cir.1982), writ denied, 423 So.2d 1183 (La.1982).
In Booth the defect consisted of a dropoff caused by excavation of the shoulder during construction work being done to widen the highway. In Booth the State was not negligent because it had given proper notice of the construction and had appropriately posted warning signs. In addition to this holding on the negligence question, the Court of Appeal for the Second Circuit also refused to hold the State liable under principles of strict liability, LSA-C.C. art. 2317. However, the Court of Appeal added the following comments on which the State relies here:
"We point out, however, that even if strict liability applied in this case, the record amply supports the trial judge's characterization of plaintiff's behavior as constituting `victim fault' which precluded her recovery. This determination by the trial court was based upon the finding of fact (not clearly erroneous) that plaintiff's driving of her car from the road's hard surface into the excavated shoulder area `required a positive action of hers to go off the inside where the forces [gravitational or centrifugal] were the other way ... on what was a very wide roadway, considerably wider than the average.'"
We are not aware of what the trial court meant in Booth by the reference to a "positive action" on the part of Booth as driver. However, "victim fault" in strict liability considerations has been equated to contributory negligence on the part of the driver (in a case decided before comparative negligence was adopted in this State). Edwards v. State, Dept. of Transp. & Devel., supra. *362 Edwards was a road shoulder case, but the same conclusion has been reached in other kinds of factual contexts. Thus, victim fault in circumstances where a motorist drives off the paved portion of the highway should follow the principles of Rue. Hence, if a motorist negligently runs off the roadway without knowledge or warning of the shoulder defect, it should make no difference whether the case is approached as a negligence case or a strict liability case. In Rue, in considering the issue of contributory negligence, the Supreme Court assumed negligence on the part of the driver. Nevertheless, the Supreme Court said "the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder."
Considering our analysis, we do not find relevant, under the circumstances of this case, any speculation as to why Mrs. Quinn ran off the highway.

II.
In its second formal assignment of error the State contends that the trial court erred in ruling that Mrs. Quinn reacted instinctively when she "pulled her car back onto the road surface when she strayed off" and in failing to find her negligent in this regard.
Mrs. Quinn was traveling between 30 and 40 miles per hour when she left the traveled portion of the highway and ran onto the shoulder. Within a matter of five seconds she made three to four attempts to re-enter the traveled portion of the highway. She did not recall her speed at that time but had taken her foot off the accelerator. Her belief is that only her right rear wheel was off of the road surface and on the shoulder. She denied making any dramatic turn to the left. She gave the following testimony in court (Tr. 368):
"Q. What did you do then, Mrs. Quinn?
A. Well, I....
Q. In reference to the speed of your vehicle?
A. I took my foot off the accelerator. I didn't brake, because I was afraid that would send me into a skid. But, I did take my foot off the accelerator. And I tried to get back onto the highway. Not any frantic twisting of the wheel, but....because I knew that wasn't the right way to do it. And....
Q. What success did you have in returning to the highway by making this steering adjustment?
A. I'm sure I tried three or four times, until my wheels finally came back on the highway. There seemed to be something that was keeping my car from coming back on the highway.
Q. And then what happened when your vehicle mounted the highway, so to speak?
A. It went into a skid....into the other lane of traffic.
Q. And what happened?
A. I was hit. I could see the headlights of an approaching vehicle."
Mrs. Quinn further testified (Tr. 383):
"Q. How did you have to turn your steering wheel to be able to regain the roadway?
A. To the left. Do you mean....with....
Q. Was it a kind of a full jerking type motion, or did you just gradually turn it?
A. I....no, I didn't do a full jerking turn. That would have surely sent me into a skid. No, I was trying to ease back up on the highway. I thought I had three good wheels to get me there.
Q. So, you thought that you had three wheels on and only one wheel off?
A. Correct.
Q. You were not aware whether or not your front....

*363 A. It seemed to me there was just the one wheel that had dropped."
Mrs. Quinn was unable to estimate the distance she traveled on the shoulder before her vehicle (or at least the rear wheel) returned to the highway and went into a skid. She testified several times that her three or four attempts to regain the highway lasted only four or five seconds. She never applied her brakes but estimates that she slowed down as a result of taking her foot off the accelerator. She could not estimate her speed at the time of re-entry but did concede that it was in excess of 20 miles per hour.
From the above we conclude that Mrs. Quinn allowed her right rear wheel at least to drift off the surfaced portion of the highway designed for travel onto the muddy shoulder at a time that she was traveling at no less than 35 miles per hour. She evidently had the presence of mind not to apply her brakes precipitantly. She indicates she was aware of the danger of making a sudden jerking movement to the left in an effort to regain the surfaced portion of the highway. However, in the next four or five seconds after the rear wheel went off the roadway, Mrs. Quinn made at least three attempts to steer her vehicle off the shoulder back onto the road surface. She readily admits she may have made as many as four attempts.
At the time it was raining, and she had seen the headlights of the oncoming vehicle driven by Robert Machacek. She admits she was aware of the fact that there was a difference in the level of the shoulder and the road surface. Certainly by the time of the failure of her second attempt to return to the surfaced portion of the road, Mrs. Quinn was aware of the nature of the difficulty in which she found herself.
This second assignment is significant because it brings into consideration the "instinctive reaction" concept applied by the Louisiana Supreme Court in LeBlanc v. State, 419 So.2d 853 (La.1982). Prior to LeBlanc the Supreme Court had made an important qualification to the rule laid down in Rue in the decision in Sinitiere v. Lavergne. Sinitiere involved a shoulder containing a dangerous drop-off. After running off of the highway the driver slowed his vehicle to 35-40 miles per hour but lost control when he attempted to reenter the highway by jumping a 3½ to 4 inch curb. Lavergne, the driver, had no previous knowledge of the low condition of the shoulder; therefore, his action in running off the roadway did not affect his recovery. However, Lavergne's attempted re-entry was treated differently and his negligence in this respect precluded recovery against the State. The Supreme Court stated if a driver is chargeable with knowledge of a shoulder defect which could cause injury and that person nevertheless disregards his own safety and the safety of others, the driver breaches his duty to himself and others in leaving the roadway. Because Lavergne had no knowledge of the shoulder condition at the time he ran off of the road, this rule of law did not apply.
On the other hand, the Supreme Court concluded from a review of the record that Lavergne "did breach the duty of reasonable care owed himself and other motorists in his vicinity at the time he attempted to re-enter the traveled portion of the highway."
On the basis of Sinitiere this Court of Appeal decided the LeBlanc case, 405 So.2d 635 (La.App. 3rd Cir.1981). In LeBlanc, plaintiff Alma Kelly LeBlanc, ran off the roadway and quickly pulled back onto the highway and lost control. This Court of Appeal found Mrs. LeBlanc negligent in attempting re-entry to the highway. The Supreme Court reversed, 419 So.2d 853, on the ground that Mrs. LeBlanc's action was instinctive and was therefore within the protection afforded by the rule announced in Rue. The Supreme Court held that it was error for this Court of Appeal to seek to extract rules of precedent from previous opinions of the high court. Instead, a court of appeal should evaluate the relationship between the State's duty to maintain road shoulders and the particular risk involved. The Supreme Court also stated: "The task of defining *364 the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises." After making a duty-risk analysis the Supreme Court stated:
"The basic question, therefore, is whether the risk of injury from a motorist's instinctive reaction to an unexpected four to six inch dropoff from a paved highway to its shoulder, produced by a combination of the Department's failure to provide a continuous even surface and the plaintiff's inadvertent straying onto the shoulder, is within the scope of protection of the rule of law which requires the Department to maintain safe highway shoulders."
The Supreme Court concluded that the overreaction was a part of the risk against which the legal duty was designed to protect.
The trial court in this case before us held that the action of Mrs. Quinn in attempting to get back onto the highway was an instinctive act. The trial court relied on LeBlanc v. State and quoted extensively from it. The defendant contends it was not an instinctive act, and the trial court erred in so holding. In deciding this issue our task is to approach this case on its own facts rather than attempting to fit the facts of this case under Sinitiere or LeBlanc. As admonished by the Supreme Court in LeBlanc, we must make a duty-risk analysis and determine whether the conduct of Mrs. Quinn under the circumstances falls within the protection of the rule associated with the State's duty to maintain shoulders of highways. Any attempt to mechanically extract a rule of precedent by focusing on the meaning of "instinctive" action may lead us into error.
Thus the issue should be framed as: Is the risk of injury from a motorist's reaction in straying from the surfaced portion of a highway so that at least a rear right wheel makes an unexpected 3½ inch dropoff onto a shoulder (presuming negligent shoulder maintenance is a cause in fact of the accident) following which the motorist persistently and unsuccessfully attempts to return to the highway within a four to five second span of time (to the extent of three to four attempts) within the scope of protection of the rule of law which requires the State to maintain safe highway shoulders?
We conclude that such a risk is not covered.
We therefore hold that the trial court was clearly wrong in applying the "instinctive reaction" rule of LeBlanc v. State, supra, to the facts of this case. The holding constitutes manifest error requiring reversal on this point.
Mrs. Quinn's testimony shows that she was at least aware of the danger of a precipitate jerking of her car to the left and indicates that she reflected on the danger of such a maneuver which she says she avoided. We conclude that at some point before she finally maneuvered her car onto the surfaced portion of the road, Mrs. Quinn was aware of the dangerous situation confronting her. Being aware of the shoulder defect she had encountered, Mrs. Quinn breached the duty of reasonable care owed to herself and others when she attempted to re-enter the traveled portion of the highway. Apparently there was nothing to prevent Mrs. Quinn from driving on the shoulder until she reduced her speed. She should have remained on the shoulder until she had reduced her speed enough to safely re-enter the traveled portion of the highway. Pitre v. Aetna Insurance Company, Inc. 456 So.2d 626 (La.1984). Her duty to follow such a course was further increased by the fact that Mrs. Quinn was meeting the oncoming vehicle driven by Mr. Robert Machacek of which she was aware. Except for the collision with the Machacek vehicle, Mrs. Quinn might not have been injured in any way. See Estate of King v. Aetna Casualty & Surety Co., 427 So.2d 902 (La.App. 3rd Cir.1983), writ denied, 433 So.2d 1048 (La.1983).

III.
In its third assignment of error the State argues that it should have been allowed *365 to question Mrs. Quinn relative to provisions contained in the Louisiana Driver's Guide. Its contention is that it would be relevant concerning whether or not she was negligent. Since we have found her to be negligent, it is unnecessary to consider whether the trial court erred in not allowing the State to question Mrs. Quinn concerning her knowledge of provisions in the pamphlet.
Although the trial court would not allow the State to question Mrs. Quinn to determine whether she was familiar with the rules and warnings contained in the pamphlet, he did admit it into evidence, subject to plaintiff's objection. The pertinent portion of the guide (entitled Safe Driving In Louisiana) reads:
"Situation: When you run off the pavement on one side don't use your brakes. Straddle the edge of the pavement until the car has almost stopped. Then turn sharply and guide your car back onto the road. Don't try to steer back onto the road until your speed is less than 20 miles per hour."
Irrespective of the materiality of the fact that Mrs. Quinn may have read the pamphlet and the instruction quoted, the proposition has been virtually stated as law jurisprudentially (without specifying any maximum speed). See Pitre v. Aetna Insurance Company, Inc., supra. Thus, the duty to follow the prescribed course of conduct is legally imposed on drivers whether or not they are familiar with the pamphlet provision.

THE STATE'S NEGLIGENCE
The State contends the trial court erred when it found the State negligent in its maintenance of the shoulder of the road. We find no such error.
The trial judge found that there was an edge rut along the road surface that ranges from 2½ inches to 6 inches deep. There was testimony by Trooper Earl Townsend, Mr. and Mrs. A.J. Smith, and Mr. Luther Lott to support this finding. Trooper Townsend testified the rut measured 2½ inches to 3 inches deep. Mr. Lott testified it was 5 to 7 inches deep. Mrs. Smith testified it was 4 or 5 inches deep the next day, and Mr. Smith testified it was 4 to 8 inches deep. There was testimony that Mr. Smith had notified the DOTD of the condition of the shoulder.
The judge was not clearly wrong in finding that the State was negligent. In Brown v. Louisiana Department of Highways, 373 So.2d 605 (La.App. 3rd Cir.1979), writ denied, 376 So.2d 1269 (La.1979), this Court found the State negligent in failing to repair a drop-off from road to shoulder of over two inches. We cannot say the trial court erred in finding the State negligent in failing to repair an edge rut of 2½ to 6 inches.

WALKER'S EXPERT TESTIMONY
The State argues that the court erred in allowing Sylvanus Walker to testify as an expert in accident reconstruction, both as to his qualifications and his conclusions.

I.
Mr. Walker testified that he is a mechanical engineer employed by A.I.D. Consulting Engineers. He began part-time consulting with A.I.D. in 1973, worked full time for A.I.D. from 1977 to April, 1980, and then 30 hours a week from then until the time of the trial in December, 1982. Fifty to sixty percent of his work at A.I.D. has been in accident reconstruction, primarily surface vehicle accidents. In the absence of clear abuse of the trial court's discretion in accepting an expert witness, the appellate courts do not reject the testimony of the expert or find reversible error. Maxwell v. State, Department of Transportation, 391 So.2d 1230 (La.App. 1st Cir. 1980). We find no abuse of discretion.

II.
The State devoted some eleven pages of its brief in an attempt to establish that Mr. Walker's conclusions were not valid. The State attacks any number of assumptions and opinions, particularly as they may vary from those of the investigating *366 officer. As a result, we are not certain as to what major points or expert opinions with which the State finds fault. We quote below a portion of the trial court's reasons for judgment which contains reference to Mr. Walker's testimony:
"As Mrs. Quinn approached this point [where she ran onto the shoulder] she saw the lights of an on-coming vehicle and moved her vehicle to the right portion of her travel lane and in so doing one or both of her right wheels inadvertently dropped from the road surface into the deep edge rut. She managed to get the right front wheel back onto the surface (if it had indeed ever gone off) but the right back wheel continued to slide along the outer edge of the road surface. A very plausible explanation for what then occurred was given by Mr. Sylvanus Caves Walker, a distinguished mechanical engineer who was qualified as an expert witness in the field of automobile accident analysis and reconstruction. According to Mr. Walker the right rear wheel was lubricated by mud, was in the deep edge rut and had no capacity for being steered therefore causing the wheel to slide along the edge of the road surface preventing the vehicle from regaining the highway by normal steering movements. As Mrs. Quinn instinctively attempted to steer back onto the highway the front of her vehicle got into an exaggerated angle as the right back wheel continued to hang in the deep rut and it was only when the rut shallowed that the right rear wheel remounted the road surface. When it did remount, her vehicle was at an exaggerated angle as a result of the backend sliding around and this coupled with the added traction from the wheel remounting propelled her into the eastbound lane where she was struck by the oncoming vehicle. The court concludes that so long as Mrs. Quinn's right rear wheel was in the portion of the rut which was 4" to 6" deep it would not remount the road surface and it was only when it reached a point of approximately 2½" depth that it remounted. It was trooper Townsend's estimate that the rut was 2½" deep at the point of reentry and it was the testimony of Mr. Smith and Mr. Lott that the rut at other points was up to 6" deep."
The explanation given by Mr. Walker, based on his assumptions, does not absolve Mrs. Quinn of fault or negligence in attempting to regain the highway. Mr. Walker accepted Mrs. Quinn's testimony that she made successive attempts to regain or remount the surface of the road. As summarized by the trial court in the quotation set forth above, Mr. Walker gave reasons for his conclusion that the right rear wheel of the Quinn vehicle was in continuous contact with and was rubbing along the edge of the surfaced portion of the highway. Among the factors assumed by Mr. Walker was that Mrs. Quinn was traveling at the rate of at least 30 m.p.h. at the time she actually re-entered the highway at which time her vehicle went out of control. (Tr. 435 and 450) He actually asserted that there probably was no deceleration between the time of the initial dropoff and the return to the pavement. (Tr. 436). Mr. Walker expressed the opinion that if Mrs. Quinn had slowed her vehicle down to a speed of 20 m.p.h. after running off the road "she might never have gotten the wheel back upon [the surface of the highway] at a real low steering angle." He could not conclude one way or the other whether she would have regained the highway. (Tr. 456) Mr. Walker also stated in this connection that oversteering on the part of Mrs. Quinn could cause loss of control under any conditions.
If we accept the opinions of Walker reviewed above, we conclude (as previously stated) that if Mrs. Quinn had not persisted in her attempts to regain the highway and had slowed down to 20 m.p.h. or less, her vehicle would not have been propelled across the highway at the angle described by Mr. Walker. In any event it would have been less likely that the vehicle would have taken this course. More important, it would not have occurred at the precise moment the Machacek vehicle arrived from the opposite direction so as to be in the *367 path of the Quinn vehicle as it went out of control. If, as Mr. Walker suggests, Mrs. Quinn had not made her attempts to return while traveling at 30 to 35 m.p.h. and slowed down, she might not have had sufficient speed to overcome a drop-off if the drop-off had continued. Had that happened, the collision with the Machacek vehicle would not have occurred.
In this discussion we are addressing the State's assignment of error which charges that the trial court erred in accepting the assumptions and conclusions of Mr. Walker on the ground that those assumptions and conclusions are at variance with those of the investigating officer. In our opinion, whether or not the trial court erred in this respect will not affect our conclusion that Mrs. Quinn was negligent and that her action in attempting to return to the highway was a cause in fact of the accident. Whether she had one wheel off on the shoulder or two, and whether or not one or both wheels were immediately next to the raised road surface material or further out onto the shoulder, the net effect is the same. Mrs. Quinn made successive attempts (two or three) to regain or remount which failed, but on the third or fourth attempt her vehicle did remount and went out of control. Speculations by the expert or trooper as to what happened specifically will not alter the fact that attempting to regain the surface of the highway at the speed at which the vehicle was traveling resulted in the vehicle going out of control.
We do not find reversible error because of any reliance of the trial court on Mr. Walker's testimony. Whether Mr. Walker's theory is correct or not, we nevertheless have to consider Mrs. Quinn's action in making successive attempts to re-enter the surfaced portion of the highway at a speed which was evidently excessive under the circumstances. The question is whether the trial court gave proper consideration to Mrs. Quinn's actions. As we have previously stated, the trial court erred in failing to find her at fault in these respects.

EXHIBITS
The State's fourth assignment of error was that the court erred in admitting photographs taken ten days to two weeks after the accident. The photographs were clearly identified as having been taken ten days to two weeks after the accident. The testimony in connection with the photographs was that they were taken in the general vicinity of the accident site. They did not show the conditions at the time of the accident, but were not introduced for that purpose. The Quinns did not contend that the pictures showed the exact place where Mrs. Quinn left the road or the place where she got back on. The court did not err in admitting the photographs.
The State then argues that the trial judge erred in allowing the plaintiff to introduce the entire deposition of Mrs. Quinn. Since the State did not object at trial to the admission of the deposition, this assignment of error cannot be considered. To preserve a party's right to urge error on appeal, it is necessary to make formal objection to admissibility or competency of evidence sought to be introduced. Coleman v. Occidental Life Insurance Company of North Carolina, 407 So.2d 6 (La. App. 3rd Cir.1981), reversed on other grounds 418 So.2d 645 (1982).

MOTION FOR DIRECTED VERDICT
The State, in its ninth assignment of error, contends the trial judge committed legal error when it granted the motion for directed verdict made by Robert Machacek, third party defendant, as to the third party demand of the State.
The State contends that the correct standard for granting a directed verdict is the standard set forth in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979) and as provided in LSA-C.C.P. art. 1810. In essence the State urges that Campbell v. Mouton requires that on a motion for a directed verdict the court must view and interpret the facts in the light most favorable to the plaintiff (third party plaintiff in this case). At the time of *368 trial Article 1810 of the Louisiana Code of Civil Procedure was divided into subparagraphs A and B. Article 1810(A) provided for directed verdicts in jury trials. That was the portion of the article under consideration in Campbell v. Mouton. Here, however, the trial was before the court sitting without a jury. Therefore the motion for directed verdict on behalf of third party defendant, Robert Machacek, was governed by Article 1810(B). Where a motion to dismiss is made in a nonjury trial under Article 1810(B) the preponderance of evidence standard applies. Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980) and Burrell v. Kirkpatrick, 410 So.2d 1255 (La. App. 3rd Cir.1982).
The dismissal of Robert Machacek is supported by a preponderance of the evidence. There was no error on the part of the trial court in granting the motion to dismiss.

DAMAGES
In its final assignment of error the State contends the trial court erred in granting Mrs. Quinn an excessive award of $65,000 in general damages. The award seems to be on the high side but falls within the much discretion of the trial judge. Mrs. Quinn was not given specific damages for lost wages, but the trial judge considered the fact that she was forced into early retirement in awarding the general damages. The early retirement resulted in some loss of wages and probably a decrease in future retirement benefits. He also considered her past and future pain. Mrs. Quinn had several broken bones, a contusion to the head and lacerations on the hands requiring suturing. The broken clavicle caused her pain and loss of motion until she submitted to surgery two years after the accident. The surgery reduced the pain but did not completely eliminate it. The trial court also considered the drastic reduction in the quality of her life and the overall damage to her physical and mental well being. Mrs. Quinn played the piano in her job and for pleasure. She was unable to play after the accident due to her limited motion from the left shoulder. Since she still has pain in her shoulder, her piano playing and other activities involving the shoulder will be affected. In light of the factors considered, the general damages are not so excessive as to be reducible.

COMPARATIVE NEGLIGENCE
Since we have found that Mrs. Quinn and the State were both at fault in this case, it is necessary to determine the percentage of negligence attributable to each. Since all the facts are before this court we may not remand the case to the trial court for a decision on this point but must decide the question ourselves. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). We find that the State and Mrs. Quinn were both at fault. Comparing the negligence, we consider that the maintenance duty of the State had been breached over some period of time, and its duty was well understood by it. The negligence of Mrs. Quinn consisted of an improper response to the hazard she encountered. Under the circumstances we conclude that the State was 80% at fault and Mrs. Quinn was 20% at fault.
The amount of damages the plaintiff can recover must be reduced by the percentage of negligence attributable to her. LSA-C.C. 2323. Mrs. Quinn can recover only 80% of the damages awarded by the trial court.

CONCLUSION
The decision of the trial court is reversed insofar as it found Mrs. Quinn free of negligence. She is found guilty of 20% of the negligence causing the accident.
In all other respects the judgment of the trial court is affirmed, subject to the reduction in the amount of the award necessitated by our finding of negligence on the part of Mrs. Quinn and the allocation of the costs. Accordingly the trial court judgment is amended so as to reduce to 80% the amount of general damages awarded by the trial court to Mrs. Quinn and to reduce the award of special damages to plaintiffs to 80% of the amount awarded by the trial *369 court. Costs of the litigation, both at the trial level and on this appeal, are assessed on the basis of 80% to the State and 20% to plaintiffs.
REVERSED IN PART, AFFIRMED IN PART.
KNOLL, Judge, concurring in part and dissenting in part.
I concur with the majority's finding that the Department of Transportation and Development (DOTD) was liable, however, I disagree that Mrs. Quinn was at fault. In order to reverse the trial court on this issue, the majority must find that the trial judge committed manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973). The majority reverses without a finding of manifest error and applies its own evaluations and inferences.
In finding Mrs. Quinn 20% at fault, the only issue the majority considered was her unexpected 3½ inch drop-off onto a shoulder and her three or four unsuccessful attempts to return to the highway within a time span of four to five seconds. In its discussion of finding Mrs. Quinn negligent, the majority did not consider the following dangerous conditions that existed on the shoulder at that time: it was dark; there was a heavy rain; the shoulder was soft, water-soaked and very muddy; the shoulder was an ascending incline that received rainfall and gravel from above. The primary cause of the accident was the extreme muddy condition of the shoulder. The white striping that outlined the roadway was covered with mud. The State Trooper who arrived at the scene of the accident approximately ten to twenty minutes after the accident testified that the shoulder was wet, muddy and hazardous.
The shoulder drop-off in this particular case did not allow a safe gradual movement onto the roadway. Mud compounded by rain is recognized as an additional factor which renders highway surfaces slippery and slick. Smith v. Markham, Brown & L.L. Sanders, 61 So.2d 515 (La.1952).
As well pointed out in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), and mentioned in the majority, a court of appeal should evaluate the relationship between the State's duty to maintain road shoulders and the particular risk involved, and, not extract rules of precedent from previous opinions of the Supreme Court.
The majority clearly recognized the negligence of DOTD and stated: "Comparing the negligence, we consider that the maintenance duty of the State had been breached over some period of time, and its duty was well understood by it." (Emphasis added.) By finding Mrs. Quinn at fault, the majority failed to evaluate the relationship between the State's duty to maintain road shoulders and the particular risk involved.
For the foregoing reasons, I respectfully concur in part and dissent in part.