470 So.2d 954 (1985)
William L. WISE, Jr. and Mrs. Thelma Allen Wise, on Behalf of the Minor, William Leon Wise, III, Plaintiffs-Appellees,
v.
The LOUISIANA DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, et al., Defendants-Appellants.
No. 84-64.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*955 John W. King, Baton Rouge, Staggord Stewart and Potter, Larry A. Stewart and Walter E. May, Alexandria, for defendants-appellants.
T. Michael Masterson and Jack B. Wise of Wise and Masterson, Thibodeaux, for plaintiffs-appellees.
Before DOMENGEAUX, DOUCET, YELVERTON, KNOLL and KING, JJ.
DOUCET, Judge.
William L. Wise, Jr. and Thelma Allen Wise brought this suit on behalf of their minor grandson, William Leon Wise, III, for the wrongful death of his mother, Jo Ann Wise. The trial court entered a judgment in favor of the plaintiff and against the State of Louisiana, Department of Transportation and Development (DOTD), for $81,165. The basis of this liability was the failure of DOTD to maintain a safe highway shoulder at the site of the collision, which was found by the trial court to be the proximate cause of the decedent's death. DOTD perfected this appeal.
The decedent was killed in a two-vehicle accident that occurred on Louisiana Highway One on May 1, 1980, at approximately 5:00 P.M. in Natchitoches Parish about four miles south of Cloutierville. Mrs. Wise, thirty-seven years of age, was riding alone in the northbound lane of the highway in her 1979 Honda Prelude. Mr. William Melvin was driving an eighteen-wheel truck on the southbound lane of the same two-laned highway. According to the testimony of Mr. Melvin in his deposition, Mrs. Wise veered onto the shoulder of the road and then suddenly veered directly into the path of the truck that Mr. Melvin was driving. The impact of the ensuing collision threw Mrs. Wise's car approximately 180 feet backward as well as breaking the car into several pieces. Mrs. Wise was killed instantly. Mr. Melvin was the only surviving witness to the collision.
After a trial on the merits, the trial court found that the sole and proximate cause of the collision was the negligence of DOTD in maintaining a defective road with a two to six inch drop-off from the road to the shoulder. The court also specifically concluded that there is no evidence to prove that Jo Ann Wise was guilty of any negligence. The State perfected this appeal wherein it argues that the trial court was in error when it concluded that the sole and proximate cause of the fatal collision was its negligence. The State also contends that the trial court erred in failing to find the decedent driver's negligence to be the proximate cause of the accident.
We will first address the alleged defective condition of the highway. DOTD is under a duty to maintain the highways and shoulders in a reasonably safe condition. The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Rue v. State, Dept. of Transportation and Development, 372 So.2d 1197 (La.1979); Holmes v. State, et al, 466 So.2d 811 (La.App. 3rd Cir.1985).
The record amply supports the trial court's conclusion that the area of the highway in question was in a defective condition because of significant elevational distances from the edge of the road and the shoulder. The trial court, in its written reasons for judgment, summarized the witness' testimony concerning the shoulder drop-off, as follows:
"(1) Investigating Louisiana State Trooper Ronald W. Lewis:

His testimony was that there was a 2 to 2½ inch difference in elevation between the shoulder and the main travel *956 portion of the highway, with the shoulder being lower.

(2) Former Natchitoches Parish Deputy Sheriff Asher Vandenburg:
His testimony as to the difference in elevation was allowed under a proffer and he estimated a difference of 3 or 4 inches elevation in the shoulder.
(3) George Darryl Taylor:
A resident of the area in which the accident took place and testified that the shoulder was in `rough' condition the day before the wreck and had been since 1978. He stated that he ran off the road near the site in question a week before the wreck and had to slow his vehicle down to drive back onto the highway. He testified that there was a drop-off of approximately 6 inches between the shoulder and the highway.
(4) Aristed `Mack' Antee:
Lived south of the accident site on what is known as the `Marco' Road. He testified that the shoulder at the scene of the accident was lower like a `rut' and had been in that situation for at least a couple of months.
(5) Lawrence M. Carnahan, Jr.:
A resident of Cloutierville and who farmed land adjacent to the scene of the accident, testified that prior to the accident the shoulders were `rutted up pretty bad', but he never got out of his truck to check the shoulders.
(6) W.L. Huffman:
A resident of Little Eva Plantation in Chopin, Louisiana, near the scene of the accident, testified that there had been a 3 inch dropoff [sic] since 1977.
(7) Mrs. Patsy Deville Huffman:
Stated that there was a 2 to 4 inch dropoff [sic] near the site in question.
(8) Natchitoches Parish Deputy Sheriff Boyd B. Durr:
Stated that he went to the scene of the wreck prior to the time the vehicles were removed. He stated that there was approximately a 4 to 5 inch dropoff [sic] for a distance of 50 feet south of the point of impact.
(9) Charles Rogé:

A resident of Cloutierville and an employee of the Department of Transportation and Development, stated that the shoulders were not level with the road and that he had personal knowledge that the shoulders were lower for at least 6 weeks to 2 months prior to the wreck. Under a proffer, he estimated a distance of a difference of 4 inches between the shoulder and the highway." (Emphasis added.)

From this evidence one can easily deduce that the road in question had a defective shoulder because of such a long drop-off and that this defect existed at the time of the accident. Therefore, we hold that the State was negligent in its failure to maintain this particular road in a reasonably safe condition. The crucial issue in this case however, is the question of causation. Was the violation of this duty the sole cause of the decedent's fatal vehicular accident or, in other words, did this duty extend to this particular plaintiff? In order to resolve this issue, a brief explanation of the relevant jurisprudence is in order.
A discussion of these road shoulder cases should begin with Rue v. State, supra. In Rue, the Louisiana Supreme Court held that a motorist who slightly veers off of a highway onto a defective shoulder through "inadvertence" is not precluded from recovery against DOTD because of his negligence in veering off of the road. In effect, the Supreme Court held that a momentary lapse in a driver's attentiveness was a foreseeable risk against which the DOTD had to protect when maintaining highways. Thus inadvertence was not to be considered contributory negligence which would bar the motorist from recovering against DOTD for its negligence in maintaining highways.
This holding in Rue, supra, was slightly modified in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), in which the Supreme Court stated that if a driver is chargeable with knowledge of the defect and nonetheless breaches his duty of safety to himself and to others by leaving the roadway, then he is guilty of contributory negligence *957 and barred from recovering. Furthermore, the Supreme Court held that the driver's attempts to re-enter the roadway once he was clearly on the defective shoulder and aware of the consequent danger were a breach of his duty of safety to himself and to others and therefore constituted contributory negligence. Accordingly, the plaintiff's contributory negligence barred his recovery against the DOTD for its negligence in maintaining the highway.
This court subsequently decided LeBlanc v. State, 405 So.2d 635 (La.App. 3rd Cir. 1981) in which we held that the driver's attempts to re-enter the roadway once he was on a defective shoulder constituted contributory negligence as it did in Sinitiere, supra. The Supreme Court reversed this decision on the ground that the attempts by the plaintiff to re-enter the highway were an instinctive reaction to the consequences of a defective road shoulder and therefore, a foreseeable risk within the ambit of the duty announced in Rue, supra. LeBlanc v. State, 419 So.2d 853 (La.1982). The Supreme Court concluded that the instinctive over-reaction to a defective shoulder was within the duty to maintain safe roads. The Supreme Court then admonished the lower courts about seeking to extract rules of precedent from its opinions on which to rely rather than deciding each case on its own merits. The Supreme Court then directed the lower courts to apply a duty-risk analysis to these cases in order to properly decide them.
In compliance with this admonishment, this court decided Quinn v. State, 464 So.2d 357 (La.App. 3rd Cir.1984). In Quinn this court stated:
"In deciding this issue (whether re-entry attempts were instinctive) our task is to approach this case on its own facts rather than attempting to fit the facts of this case under Sinitiere or LeBlanc. As admonished by the Supreme Court in LeBlanc, we must make a duty risk analysis and determine whether the conduct of Mrs. Quinn under the circumstances falls within the protection of the rule associated with the State's duty to maintain shoulders of highways. Any attempt to mechanically extract a rule of precedent by focusing on the meaning of `instinctive' action may lead us into error.
Thus the issue should be framed as: Is the risk of injury from a motorist's reaction in straying from the surfaced portion of a highway so that at least a rear right wheel makes an unexpected 3½ inch drop-off onto a shoulder (presuming negligent shoulder maintenance is a cause in fact of the accident) following which the motorist persistently and unsuccessfully attempts to return to the highway within a four to five second span of time (to the extent of three to four attempts) within the scope of protection of the rule of law which requires the State to maintain safe highway shoulders?
We conclude that such a risk is not covered.
Mrs. Quinn's testimony shows that she was at least aware of the danger of a precipitate jerking of her car to the left and indicates that she reflected on the danger of such a maneuver which she says she avoided. We conclude that at some point before she finally maneuvered her car onto the surfaced portion of the road, Mrs. Quinn was aware of the dangerous situation confronting her. Being aware of the shoulder defect she had encountered, Mrs. Quinn breached the duty of reasonable care owed to herself and others when she attempted to re-enter the traveled portion of the highway. Apparently there was nothing to prevent Mrs. Quinn from driving on the shoulder until she reduced her speed. She should have remained on the shoulder until she had reduced her speed enough to safely re-enter the traveled portion of the highway. Pitre v. Aetna Insurance Company, [456] So.2d [626] (La.1984), Docket No. 83-C-1771, decided September 10, 1984. Her duty to follow such a course was further increased by the fact that Mrs. Quinn was meeting the oncoming vehicle driven by Mr. Robert Machacek of which she was aware. Except for the collision with the Machacek *958 vehicle, Mrs. Quinn might not have been injured in any way. See Estate of King v. Aetna Casualty & Surety Co., 427 So.2d 902 (La.App. 3rd Cir.1983), writ denied, 433 So.2d 1048 (La.1983)."
Accordingly, in the case at bar, we shall frame the issue as follows: Is the risk of injury of staying onto a defective shoulder by a motorist chargeable with knowledge of the defective shoulder and nonetheless seeks to re-enter the road with a degree of deliberation within the scope of protection of the rule of law which requires the State to maintain safe highway shoulders?
After reviewing the record, we conclude that this particular motorist in this particular risk does not come with the scope of protection. It was clearly established at the trial that Mrs. Wise had often used the road in question and that the road's shoulder had been defective for several years. Thus, Mrs. Wise knew, or should have known, of the hazardous condition of the road's shoulder. Furthermore, the only surviving eyewitness to the accident, Mr. Melvin, who was driving the truck, stated that when he first noticed the decedent's car it was already on the shoulder. This testimony suggests that the decedent did not instinctively over-react to an inadvertent drop-off of the highway, but that she consciously sought to re-enter the highway fully aware of the hazards that such an attempt would present. The distinction between this case and LeBlanc v. State, supra, lies in our finding of fact that Mrs. Wise was on the shoulder long enough to have made a deliberate decision to return to the highway, and thus, her return to the highway was not an instinctive reaction. The evidence supporting our finding that it was a deliberate reaction, in turn lies solely in the deposition of the driver of the 18-wheeler, which contains the only eyewitness account of how the accident happened. He said in his deposition that when he first saw the Honda, it was already on the shoulder. He did not see the Honda go off the highway but he did see it re-enter the highway. When he first saw it, the right wheels were on the shoulder, and then suddenly it darted onto the highway, crossing directly in his path. This testimony is inconsistent with the trial court's implied finding that the Honda made an instinctive return to the highway. If Mrs. Wise had made an instinctive return to the highway, once she dropped off, the entire scene would have registered on the mind of the witness as a single event. His testimony that when he saw her the first time she was already on the shoulder, indicates that her leaving the highway and getting back on again did not constitute a simultaneous event. Some interval of time must have elapsed while she was on the shoulder. Therefore, her re-entry was a deliberate one, not an instinctive one. Finally, there is nothing in the record which would indicate that there was something that prevented Mrs. Wise from continuing to proceed on the shoulder until she could slow down to a safe speed. Under all of these circumstances, we hold that Mrs. Wise was negligent when she inadvertently veered off of the highway and then consciously sought to re-enter the highway with knowledge of the attendant dangers.
In reaching the above factual conclusions regarding the deceased's negligence, we note that we are not bound here by the manifest error standard of review. This is because the trial court's implied finding that Mrs. Wise was not negligent was based entirely on the above deposition evidence. This deposition was the only evidence in the record describing the deceased's conduct just before the accident. The "clearly wrong" (or manifest error) standard of review is therefore not applicable, as the trial court is in no better position to evaluate credibility or resolve conflicts in deposition testimony than the reviewing court. Gould v. State Through La. Dept. of Correct., 435 So.2d 540 (La. App. 1st Cir.1983), writ denied, 438 So.2d 1107 (La.1983); Schwarz v. Bourgeois, 422 So.2d 1176 (La.App. 4th Cir.1982), writ denied, 429 So.2d 153 (La.1983); Farris v. Ducote, 293 So.2d 589 (La.App. 3rd Cir. 1974), writ refused, 295 So.2d 814 (La. 1974).
*959 We must add that we do not feel that the State was completely free from fault but because the accident occurred before the effective date of La.C.C. art. 2323 which provides for comparative negligence, we are unable to assess degrees of fault accordingly. Instead, the plaintiff's claim is barred by the contributory negligence of the driver. Quinn v. State, supra. It is hereby adjudged and decreed that the plaintiff's claim is barred and a recovery of damages is not merited in this case.
For the foregoing reasons, the judgment of the trial court is reversed and a judgment by this court is rendered against the plaintiff-appellee. Costs of this appeal are to be paid by the plaintiff-appellee.
REVERSED AND RENDERED.
KNOLL, J., dissents and assigns reasons.
KING, J., dissents and assigns written reasons.
KNOLL, Judge, dissenting.
I concur with the majority's finding that the Department of Transportation and Development was negligent in its failure to maintain this particular road shoulder in a reasonably safe condition. However, I disagree that Mrs. Wise was contributorily negligent. The majority reverses by applying its own evaluations and inferences. Reasonable inferences of fact should not be disturbed even though an appellate court may feel that its own evaluations and inferences are as reasonable. Canter v. Koehring, 283 So.2d 716 (La.1973).
The record clearly supports the trial judge's evaluation of the evidence in this case. As well pointed out in Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), a court of appeal should evaluate the relationship between the State's duty to maintain road shoulders and the particular risk involved, and not extract rules of precedent from previous opinions of the Supreme Court. The record does not support that the trial judge committed manifest error; the majority opinion substitutes its own evaluations and inferences which are reasonable, but it is not the standard for finding manifest error. The majority, by mere speculation, concludes that Mrs. Wise's reentry was a deliberate one, therefore, she was contributorily negligent. The trial judge's evaluation of this evidence should be given more weight by a reviewing court. For the foregoing reasons, I respectfully dissent.
KING, Judge, dissenting.
The majority finds that the evidence amply supports the trial court's finding of fact that the highway was in a defective condition because of a significant elevational drop from the edge of the asphalt roadway to the shoulder. The majority correctly holds that the State was negligent in its failure to maintain the highway at the site of the accident in a reasonably safe condition.
However, the majority finds that the crucial issue in this case was a question of causation and I believe incorrectly finds that the decedent, Mrs. Joanne Wise, was contributorily negligent in attempting to re-enter the roadway after leaving the asphalt travel surface.
The evidence in the record amply reflects that the shoulder of the highway was constructed of gravel, with loose gravel, potholes, and ruts in the shoulder at the place where the accident occurred. Several of the witnesses testified that the shoulder was in pretty rough shape.
The only eye witness to the accident, Mr. William V. Melvin, the driver of the truck which killed the decedent, testified that he did not see the decedent's Honda automobile leave the asphalt travel surface and that when he first saw the decedent's Honda automobile on the shoulder of the highway that it was skidding sideways out of control. He stated in response to questions as follows:
"Q. Was there any dust or rocks or anything that you could see coming from the wheels of the Honda as it traveled along the shoulder?
"A. That short distance, looked like in a skid sort of.

*960 "Q. While it was on the shoulder?
"A. Yes, sir.
"Q. Now, by that, what did you see about that Honda that looked to you like it might have been out of control on the shoulder? What was the car doing that led you to that opinion?
"A. Kind of like a trip you know. Kind of like skidding, like lost control, you know.
"Q. Would it be accurateare you stating the rear end of the car was trying to get ahead of the front end?
"A. Not that much, just kinda of moving, not tracking itself, but moving over a little as it was coming, you know, like sliding.
"Q. Like the front end was moving
"A. Like the tail end was sliding around, you know, I can't describe it that plainly, but
"Q. Was it trying to get sideways?
"A. Yes, sir.
"Q. While it was on the shoulder?
"A. It was kind of like in a skid.
"Q. Can you estimate the length of time (snaps finger) in say seconds, that you were able to see it do this before it dodged back, back in the road, like snapping your fingers and counting seconds like that (snapping fingers), could you give an estimate like that?
"A. Like that (snaps three times).
"Q. About three seconds? Would that be your estimate?
"A. Yes, sir.
"Q. You saw the car appear to be sliding on the shoulder before it darted in front of you?
"A. Yes, sir." (Deposition of Mr. Melvin, pages 25, 26, 27.)
* * * * * *
"Q. Okay, now, how longwhen you first saw the car on the shoulder, realized it was on the shoulder, was it appearing to skid at that instant?
"A. When it left the road, that is when I seen it off the shoulder, it appeared to be in a skid and when it came back, it just came across.
"Q. My answer is, from the first time you, the first instant you saw the car, it appeared in a skid?
"A. When it left the road.
"Q. Now, you have given us three seconds and then you have given us two seconds. Would that be as accurate as best you could estimate?
"A. It would be the best I can estimate.
"Q. The total time you saw it, from the time you first saw it until the time it hit your truck?
"A. Yes, sir.
"Q. So you had about five seconds, give or take, to observe the car before the impact?
"A. Yes, sir. But the three seconds, it was on its side, on the northbound side. It was justI had no idea it was going to come over on the southbound side. I have seen cars off the road before and I just didn't feel that the car was going to go out of control that much." (Deposition of Mr. Melvin, pages 28, 29.)
The majority finds that the testimony of Mr. Melvin suggests that Mrs. Wise did not instinctively over-react to an inadvertent drop-off of the highway, but that she consciously sought to re-enter the highway fully aware of the hazards that such an attempt would present. The majority arrives at this conclusion because Mr. Melvin said that when he first saw Mrs. Wise's car it was on the shoulder, which indicated her leaving and returning to the highway did not constitute a simultaneous event, therefore, the majority speculates that Mrs. Wise's re-entry must have been a deliberate act rather than an instinctive act. The majority fails to point out that the entire time Mr. Melvin saw Mrs. Wise's car on the shoulder was for only three seconds. I disagree with the logic that three seconds is the length of time for a deliberate rather than an instinctive act to occur particularly when the evidence shows that the car was skidding sideways on the shoulder out of control during this three seconds. The majority then distinguishes Mrs. Wise's actions from an inadvertent or instinctive reaction *961 to re-enter the highway such as in Leblanc v. State, 419 So.2d 853 (La.1982) and finds her contributorily negligent precluding any recovery by her minor child for his mother's death. The majority completely fails to mention or consider the testimony of the only eye witness that Mrs. Wise's Honda automobile was skidding sideways out of control while on the shoulder of the road before re-entering the roadway into the path of the truck which killed her.
Just as the plaintiffs must prove causation with reference to a dangerous drop-off from the roadway to the shoulder and an accident, the State, as a defendant, must prove causation with reference to the actions of Mrs. Wise. Thus, the evidence, as a whole, must show more probably than not that Mrs. Wise's actions caused the accident and her resulting death. I believe that the State totally failed to meet its burden of proof from the evidence presented at trial.
It is well established that the DOTD is charged with the duty of maintaining highway shoulders in a safe condition. Grappe v. State of Louisiana, Department of Transportation and Development, 462 So.2d 1337 (La.App. 3rd Cir.1985); McSweeny v. Department of Transportation, Etc., 442 So.2d 659 (La.App. 1st Cir.1983); LeBlanc v. State Department of Highways, supra; Palermo v. Allstate Insurance Company, 415 So.2d 437 (La.App. 1st Cir.1982). The DOTD's duty of maintaining the shoulders of state highways encompasses the risk that a driver who is operating a vehicle might inadvertently leave the highway, drop off onto the shoulder and lose control of the vehicle. Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979).
Louisiana courts have allowed recovery to a driver entering the roadway from a low shoulder where there has been a low shoulder and a defect in the shoulder itself which contributed to the accident. Grappe v. State, Dept. of Trans. & Dev., supra; Rue v. State, Dept. of Highways, supra; Palermo v. Allstate Ins. Co., supra. From the evidence there is no question that there was a low shoulder and defects in the shoulder itself, such as loose gravel, ruts, and potholes, which could have caused Mrs. Wise's car to go out of control and skid sideways on the shoulder.
Causation is a question of fact as to which the trial court's determinations are entitled to great weight. Grappe v. State, Dept. of Trans. & Dev., supra; Rivet v. State, through Department of Transportation, 434 So.2d 436 (La.App. 3rd Cir. 1983); Smith v. State, through Department of Transportation, Etc., 412 So.2d 685 (La.App. 2nd Cir.1982), writ denied 413 So.2d 907 (La.1982). This is true despite the circumstance that testimony of witnesses is received by deposition. Cf. Gradney v. Vancouver Plywood Company, Inc., 299 So.2d 347 (La.1974).
While it is correct that the "clearly wrong" (or manifest error) standard of appellate review is not applicable to deposition testimony, as the trial court is in no better position to evaluate credibility or resolve conflicts in deposition testimony than the appellate court, the trial court is allocated the function of making factual determinations and the appellate court is allocated the function of reviewing the record to determine whether or not those factual findings are supported by the evidence. Fontenot v. Ludeau, 309 So.2d 772 (La.App. 3rd Cir.1975). When evaluating depositions, rather than live testimony, the appellate court must determine, as a fundamental function of the reviewing court, the sufficiency and preponderance of the evidence. Gould v. State, through Louisiana Department of Corrections, 435 So.2d 540 (La.App. 1st Cir.1983), writ denied 438 So.2d 1107 (La.1983); Blue Streak Enterprises v. Cherrie, 263 So.2d 734 (La.App. 4th Cir.1972).
The trial judge's factual finding that there was no negligence on the part of Mrs. Wise, based on the evidence in the record which showed her car skidding sideways out of control on the shoulder before re-entering the roadway, is certainly supported by the evidence. Based on the deposition testimony of the only eye witness to the accident, I do not believe that the majority should now say that the trial judge's finding of fact that Mrs. Wise was not *962 guilty of contributory negligence is not supported by the record and certainly, I do not think that the same deposition testimony, as a whole, is sufficient and preponderates to show that more probably than not that Mrs. Wise's actions in re-entering the roadway were negligent. There was no evidence that Mrs. Wise had persistently and unsuccessfully attempted to return to the roadway such as the motorist in Quinn v. State, through Dept. of Highways, 464 So.2d 357 (La.App. 3rd Cir.1985), writ denied (La.1985). To the contrary, the evidence shows that Mrs. Wise's car was in a slide out of control on the shoulder before re-entering the roadway.
I agree with Judge Knoll in her dissenting opinion that the majority substitutes their own evaluations and inferences of the evidence for the factual findings of the trial judge rather than determining whether or not those factual findings by the trial judge are supported by the evidence. I also agree with Judge Knoll that the majority by mere speculation concludes that Mrs. Wise's re-entry from the shoulder was a deliberate act causing her own death for which her child is not entitled to recover.
I respectfully dissent from the majority opinion reversing the decision of the trial court.